828 A.2d 1043

**Wayne DANIELS, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TRISTATE TRANSPORT), Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 2001.

Decided July 22, 2003.

Kathy Kennedy, for Wayne Daniels, Appellant.

Amber Marie Kenger, Mechanicsburg, for W.C.A.B., Appellee.

Jonathan F. Ball, for Tristate Transport, Appellee.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

JUSTICE CASTILLE.

This Court granted allowance of appeal to determine whether the Workers' Compensation Judge ("WCJ") in this case failed to adequately explain on the record why she rejected claimant/appellant's conflicting medical evidence pursuant to Section 422(a) of the Workers' Compensation Act ("the Act"). *See* 77 P.S. § 834 (effective August 23, 1996). For the following reasons, we vacate and remand to the WCJ for proceedings consistent with this opinion.

On December 13, 1990 appellant was involved in a motor vehicle accident while in the course and scope of his employment with his employer, Tristate Transport. He filed a claim petition for workers' compensation benefits alleging injury to his lumbosacral spine and continuing lower back pain with

radiation into his lower extremities. On August 10, 1991 the WCJ found that appellant had sustained a work-related injury and awarded benefits at the rate of $200 per week as of December 14, 1990. On January 9, 1992 Employer filed a termination petition, alleging that as of November 7, 1991 appellant's disability had ceased and he was able to return to work without restrictions. On February 19, 1992 appellant filed an answer denying Employer's allegations and claiming that he remained temporarily totally disabled.

The medical expert evidence concerning the status of appellant's work injury was disputed. Employer submitted the deposition testimony of John T. Williams, M.D., a board-certified orthopedic surgeon, who had examined appellant on November 7, 1991. Dr. Williams opined that appellant had sustained an acute lumbosacral strain and sprain that had since resolved and, thus, appellant was able to return to work without restrictions. In reaching his diagnosis, Dr. Williams did not review the x-rays, CAT scan, and nerve conduction tests which had been previously performed on appellant sometime between mid-December 1990 and November 7, 1991.

Appellant rebutted this evidence by submitting the deposition testimony of Dr. Steven Fabian, M.D., a family physician and appellant's treating physician, who first examined appellant on the date of his work injury. During this examination, Dr. Fabian determined that appellant suffered from spasms in the paraspinal muscles of the cervical and lumbar regions, and that appellant had a 45% limitation of motion in his cervical spine and a 50% limitation of flexion, extension, and rotation in the lumbar region of his back. After nine months of physical therapy, Dr. Fabian found that appellant had hit a plateau of a 20–25% limitation of motion. Dr. Fabian had last examined appellant on October 16, 1992, at which time appellant complained of pain in his lumbar spine and legs. Based upon that examination Dr. Fabian opined that appellant's limitation of cervical flexion, extension, and rotation had improved substantially, i.e., it was now at 15%. Dr. Fabian also opined that appellant suffered from post-traumatic cervical and lumbar sprain with a protruding disc at L–4–5 level. Dr. Fabian

reviewed the CAT scan, which revealed a mildly concentrically protruding disc at level L–4–5 and a normal EMG. Dr. Fabian opined that appellant could not return to his duties as an ambulance driver with Employer, or to any other employment at that time, as he still experienced pain which was exacerbated by physical activity. Dr. Fabian also noted that appellant had limited mobility in his back which precluded him from doing any active physical work, sitting for periods of more than fifteen to twenty minutes, or walking more than short distances.

Appellant testified before the WCJ on December 10, 1992 and claimed that his lower back and legs had continued to bother him since the work injury. Appellant stated that he still could not stand or sit for more than one hour; he experienced pain in his lower back when he walked; and he could lift only twenty pounds. Due to his continued pain and limited mobility, appellant testified, he did not think he could return to work with Employer in his pre-injury capacity as an ambulance driver, a job which required him to lift patients and equip ambulances with items such as oxygen tanks weighing up to one hundred pounds. Appellant further testified that he was receiving physical therapy three times a week, that he sees Dr. Fabian once a week, and that he takes Tylenol with codeine for pain.

The WCJ filed her decision on March 14, 1997, finding in favor of Employer and ordering the termination of appellant's benefits as of November 7, 1991.[1] After summarizing the testimony of Dr. Williams, Dr. Fabian, and appellant, the WCJ made the following, determinative findings:

16. Based upon a review of the evidentiary record as a whole, this Judge finds the testimony of the Claimant is not credible or persuasive.

17. Based upon a review of the evidentiary record as a whole, this Judge finds the opinions of Dr. Williams to be more credible and persuasive than the opinions of Dr.

1. There is no explanation in the record or the parties' briefs for the substantial delay in the rendering of the WCJ's decision.

Fabian. Accordingly, the opinions of Dr. Fabian are rejected wherever inconsistent with the opinions of Dr. Williams.

18. This Judge finds Claimant was fully recovered from his December 13, 1990 work injury as of November 7, 1991.

WCJ's Decision at 4.

Appellant appealed to the Workers' Compensation Appeal Board ("WCAB"), which affirmed the WCJ's termination decision. Upon further appeal, the Commonwealth Court, sitting *en banc*, affirmed by a 5–2 vote. *Daniels v. Workers' Compensation Appeal Bd. (Tristate Transport)*, 753 A.2d 293 (Pa.Cmwlth.2000). On the salient question presented here—*i.e.*, the contours of the "reasoned decision" requirement set forth in Section 422(a) of the Act in a case where the WCJ is presented with conflicting evidence—the majority opinion by Judge Kelley noted that questions of credibility and weight of the evidence fall within the exclusive province of the WCJ as fact-finder. *Id.* at 303. The majority then found that the WCAB had "properly determined that the WCJ provided an adequate explanation for her determination by outlining all of the evidence considered, stating the credible evidence on which she relied, and setting forth the reasons for the ultimate denial of Employer's termination petition." *Id.* at 305.[2]

Judge Friedman, joined by Judge Pellegrini, dissented. The dissent noted that the WCJ had "made no attempt to explain, much less to adequately explain, her reasons for rejecting or discrediting competent evidence," as required by the 1996 amendment to Section 422(a) of the Act. *Id.* at 307. Although the dissent did not dispute that the WCJ was authorized to make credibility determinations, in the dissent's view the WCJ's failure to explain the basis for her credibility determination where the evidence was conflicting did not

2. Appellant also argued before the Commonwealth Court that Employer's medical evidence was insufficient as a matter of law to support the termination of benefits because Dr. Williams had failed even to address a portion of appellant's injury, *i.e.*, his lumbar radiculopathy. The Commonwealth Court found that Dr. Williams did address all aspects of appellant's compensable work-related injury in determining that appellant had fully recovered from his injury. This additional issue is not before this Court.

satisfy the reasoned decision requirement. The dissent also acknowledged Employer's argument that the fact that the WCJ had listed her findings and pointed to "telling portions of the record," made it "not hard to imagine how the WCJ reached her conclusions." But, the dissent noted that this argument merely illustrated the dissent's point: "the 1996 amendments have cleared any doubt as to the legislature's intent to prevent the parties from having to 'imagine' why certain credibility determinations were made." *Id.* at 308. Accordingly, the dissent would have remanded the matter for the WCJ to provide an adequate explanation of the reason(s) for discrediting appellant's competent evidence. *Id.* at 309.

█ In workers' compensation appeals, this Court must affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Mitchell v. Workers' Compensation Appeal Bd. (Steve's Prince of Steaks)*, 572 Pa.380, 815 A.2d 620, 623–24 (2003); *Reinforced Earth Co. v. Workers' Compensation Appeal Bd. (Astudillo)*, 570 Pa.464, 810 A.2d 99, 104 (2002) (plurality opinion). The specific question for this Court is a purely legal one, *i.e.,* the proper construction of Section 422(a)'s reasoned decision requirement in a case with conflicting evidence. Our review of this question is plenary. *See Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citation omitted).

Section 422(a) provides, among other things, that the parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. The statute also requires the WCJ to specify the evidence upon which he or she is relying, and to state the reasons for accepting that evidence. *Id.* In 1996, the General Assembly amended Section 422(a) to further elucidate the

requirement for a reasoned decision, by adding the following two sentences:

> When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection.

*Id.* Section 422(a) concludes by noting that the WCJ's adjudication shall "provide the basis for meaningful appellate review." *Id.*[3]

■ Appellant claims that the WCJ's credibility determination here was not accompanied by an adequate explanation to comply with the "reasoned decision" requirement of Section 422(a) since there was conflicting evidence as to whether his work injury had resolved itself. Echoing the Commonwealth Court dissent, appellant argues that the WCJ merely summarized the testimony of the witnesses and announced her conclusion on credibility without attempting to explain the reasons for rejecting appellant's competent evidence. Brief of Appellant at 14. Appellant submits that the 1996 amendments

3. The full text of Section 422(a) now reads as follows:

> Neither the board nor any of it members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.
> 77 P.S. § 834.

to Section 422(a) reveal the General Assembly's intent to require more than such summarizations and conclusory findings, so as to avoid speculation about why credibility determinations were made and to make possible meaningful appellate review. *Id.* at 13. Because the WCJ's decision did not elucidate reasons for her controlling credibility finding, appellant argues, the WCAB erred in affirming the WCJ's adjudication,[4] and the Commonwealth Court erred in affirming the WCAB's decision, since it was not in accordance with law. *See* 2 Pa.C.S. § 704. Brief of Appellant at 11.

In responding to appellant's plain meaning construction of the statute, Employer does not dispute the validity of the reasoned decision requirement set forth in Section 422(a). Employer instead argues, as it did successfully below, that the WCJ's decision in this case was a reasoned one because all parties could discern how and why she decided to terminate appellant's benefits and because her decision provided for meaningful appellate review. Brief of Appellee at 10. According to Employer, the WCJ need only demonstrate that all pertinent evidence was considered before the decision was rendered. *Id.* at 15–17. Here, the WCJ accurately summarized the salient portions of the testimony of Dr. Williams, Dr. Fabian, and appellant, thereby demonstrating that she considered the substance of the testimony of each witness and setting forth those elements of the testimony upon which she ultimately relied in rendering her decision. *Id.* at 18. Employer further argues that WCJs should not be required to detail factors or considerations leading to determinations of witness credibility and evidentiary weight, for such would be "tantamount to inviting a reviewing body to supplant" the WCJ's credibility and weight determinations. *Id.* at 9. In this regard, Employer argues that the General Assembly "could

---

**4.** Section 423(c) of the Act sets forth the WCAB's power of review as follows:

> The board shall hear the appeal on the record certified by the workers' compensation judge's office. The board shall affirm the workers' compensation judge adjudication, **unless it shall find that the adjudication is not in compliance with section 422(a)** and the other provisions of this act.

77 P.S. § 854.2 (emphasis added).

not have intended the absurd result of protracting litigation by remanding for additional explanations that ... are not themselves subject to review." *Id.* at 20.

This Court has not yet had occasion to examine the contours of the reasoned decision requirement of Section 422(a). *But see generally, Wintermyer, Inc. v. Workers' Compensation Appeal Bd. (Marlowe)*, 571 Pa.189, 812 A.2d 478, 487 n.13 (2002) (noting that adoption of reasoned decision requirement evidences General Assembly's intention that appellate review be conducted in manner "that ensures that the agency has not exceeded its fact-finding role or the outer limits of its discretion"). The Commonwealth Court, however, has decided a series of cases addressing whether adjudications by a WCJ were "reasoned" within the meaning of Section 422(a). *See, e.g., Darrall v. Workers' Compensation Appeal Bd. (H.J. Heinz Co.)*, 792 A.2d 706, 715–16 (Pa.Cmwlth.2002) (reasoned decision even though WCJ did not discuss testimony of witness, where WCJ's thorough review of controlling case law rendered accounting for witness's testimony unnecessary); *Montgomery Tank Lines v. Workers' Compensation Appeal Bd. (Humphries)*, 792 A.2d 6, 13 n. 10 (Pa.Cmwlth.2002) (reasoned decision even though certain exhibits not addressed, as Section 422(a) does not require WCJ to address all evidence); *Supervalu, Inc. v. Workers' Compensation Appeal Bd. (Bowser)*, 755 A.2d 715, 721 (Pa.Cmwlth.2000) (reasoned decision where WCJ discredited claimant's expert because expert said claimant could not work, but claimant did work for four years and testified he remains able to work); *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Bd. (Cruceta)*, 749 A.2d 1021, 1022 (Pa.Cmwlth.2000) (reasoned decision where WCJ stated he rejected testimony of employer's expert because expert was unable to attribute claimant's neck injury to traumatic incident other than work-related ones); *Lambie v. Workers' Compensation Appeal Bd. (Curry Lumber Co.)*, 736 A.2d 67, 70 (Pa.Cmwlth.1999) (reasoned decision where WCJ stated he rejected testimony of claimant and his witness because they were unclear as to amount of time claimant spent in Pennsylvania); *Cooper Power Systems v. Workers' Com-*

*pensation Appeal Bd. (McFarland)*, 722 A.2d 746, 749–50 (Pa.Cmwlth.1998) (reasoned decision where WCJ explained she discredited employer's medical expert testimony because expert's report was internally inconsistent and expert reached conclusions without any basis); *PEC Contracting Engineers v. Workers' Compensation Appeal Bd. (Hutchison)*, 717 A.2d 1086, 1088 (Pa.Cmwlth.1998) (reasoned decision where WCJ credited claimant's medical expert because of his experience and familiarity with treating claimant, and rejected testimony of employer's medical expert because expert only saw claimant twice for total of forty minutes and because expert testified 90% of time for employers); *Roccuzzo v. Workers' Compensation Appeal Bd. (School District of Philadelphia)*, 721 A.2d 1171, 1175 (Pa.Cmwlth.1998) (reasoned decision where WCJ credited employers' expert over claimant's expert because employer's expert examined claimant much closer in time to date of injury). The *Supervalu; Empire Steel; Cooper Power Systems; PEC Contracting*, and *Roccuzzo* cases are most instructive as they present scenarios analogous to the case *sub judice, i.e.*, they involve disputed expert medical evidence.

In *Supervalu*, the WCJ summarized the relevant deposition testimony of the parties' medical experts. *Supervalu*, 755 A.2d at 718–19. The WCJ's findings of fact addressed the claimant's physical limitations caused by a work-related injury to his left leg and the claimant's ability to work in a modified capacity. On the question of whether the claimant was able to perform the modified work, the WCJ explained that he credited the employer's expert, and discredited the claimant's expert, because the claimant's expert had stated that the claimant was "unable to perform" the modified work from its inception, yet the claimant in fact had performed the work for almost four years and testified that he remained able to perform it. *Id.* at 718–19. In affirming the WCJ's credibility finding, the Commonwealth Court held that a WCJ provides an adequate explanation for his determination pursuant to Section 422(a) "by outlining the evidence considered, stating the credible evidence on which he relied, and setting forth the reasons for the ultimate [decision]." *Id.* at 721.

*Empire Steel* involved a claimant alleging a work-related neck injury caused by lifting large pieces of steel, often weighing more than 50 pounds, throughout the day. Granting the claimant ongoing disability benefits, as well as an additional award for a resulting permanent disfiguring scar, the WCJ found that the claimant's testimony, coupled with the deposition testimony presented by the claimant's treating physician, established that his neck injury was caused and/or substantially aggravated by his work activities. In rejecting the contrary testimony of the employer's medical expert witness, the WCJ explained that that witness was unable to attribute the claimant's neck injury to any traumatic incidents other than the work-related ones. 749 A.2d at 1023, 1026–27. The Commonwealth Court concluded that the credibility determination was a "reasoned" one. *Id.* at 1027.

The claimant in *Cooper Power Systems* alleged that he suffered a permanent bilateral hearing loss resulting from hazardous occupational noise. The parties' medical experts agreed that the claimant had suffered bilateral hearing impairment. The dispute involved causation, with the claimant's expert attributing the entire loss to occupational noise and the employer's expert attributing a portion of the loss to aging. The WCJ accepted the claimant's expert evidence and discredited the employer's medical evidence, explaining that the employer's expert's report was internally inconsistent because the expert stated that his examination revealed no abnormalities but later stated that the claimant suffered a low frequency hearing loss. 722 A.2d at 749–50. The WCJ also noted that, while the employer's expert had stated that aging and heredity may have contributed to the claimant's hearing loss, the record revealed no family history of hearing loss and the claimant maintained that there was no such family history. *Id.* The Commonwealth Court found the WCJ's credibility decision to be a reasoned one.

In *PEC Contracting*, the WCJ credited the claimant's medical expert because of his long experience as a treating physician and his familiarity with the claimant. In contrast, the WCJ noted, the employer's medical expert witness had exam-

ined the claimant only twice, had spent only a total of forty minutes examining the claimant, and testified on behalf of employers more than 90% of the time. 717 A.2d at 1088. The Commonwealth Court concluded that the WCJ's credibility decision was "reasoned" within the meaning of Section 422(a). *Id.* at 1088–89. The court also found that the "WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a)." *Id.* at 1089.

Finally, in *Roccuzzo,* the Commonwealth Court found that the WCJ had rendered a reasoned credibility decision. In that case, the WCJ stated that the claimant had fully recovered from his work-related back injury and that his remaining physical problems were related to a pre-existing, long-standing herniated disc. The WCJ found the deposition testimony of the employer's medical expert credible and convincing and rejected the contradictory deposition testimony of the claimant's medical expert. In so doing, the WCJ had noted that the employer's expert had examined the claimant six months after the work injury, and again six months later, while the claimant's expert did not see the claimant until four years after the injury. 721 A.2d at 1172–73.

In each of these cases involving conflicting medical testimony, the WCJ provided a case-specific, if brief, explanation for the credibility determination, focusing on such common factors affecting credibility as the relative timeliness of examinations, familiarity with the patient, possible litigation bias, and inconsistencies in proof. The Commonwealth Court correctly held that the WCJs' explanations, while not always containing a great deal of detail, nevertheless met the requirements of Section 422(a) since they were sufficient to allow for adequate review under the applicable review standards for a matter of this nature.

These cases stand in contrast to *Hahnemann Univ. Hosp. v. Workers' Compensation Appeal Bd. (Wallace),* 718 A.2d 391 (Pa.Cmwlth.1998)—a panel decision which the *en banc* panel below expressly overruled in rendering its decision here. *See* 753 A.2d at 305 n. 14. In *Hahnemann,* the panel found that

the WCJ had failed to issue a reasoned decision because he neglected to adequately explain why he rejected competent, conflicting evidence. *Id.* at 396–97.[5] There, the WCJ announced eight brief findings of fact without summarizing the testimony of the claimant or the expert witnesses. *Id.* at 396. On the question of conflicting medical evidence, the WCJ simply stated: "The [WCJ] finds the testimony and opinions of Claimant's medical witnesses, Dr. Ruth and Dr. Fisher to be more credible and persuasive than the testimony and opinions of [Employer's] medical witness, Dr. Murray Glickman." *Id.* The panel remanded the case for the WCJ to issue an amended decision under Section 422(a).

Section 422(a) is peculiar in that it imposes obligations directly upon administrative officials (the WCJ and the WCAB) for the purpose of facilitating a judicial function, *i.e.,* to "provide the basis for meaningful appellate review." As such, the provision arguably could be said to raise separation of powers concerns. But, we recognize that workers' compensation proceedings, while quasi-judicial in nature, originate in the executive branch, over which the General Assembly has traditionally set the standard of review. *See* 2 Pa.C.S. § 704. Moreover, the Assembly's implementation of the reasoned decision mandate in Section 422(a) occurred at a time when this Court had interpreted the Administrative Agency Law as prohibiting appellate review for capricious disregard of evidence on the part of the factfinder. *See McGovern's Estate v. State Employees' Retirement Bd.,* 512 Pa. 377, 517 A.2d 523, 525 (1986), *overruled in part by Wintermyer, supra,* 812 A.2d at 487 & n. 12. In adopting the requirement, the General Assembly may well have sought to address the void in appellate review of agency adjudications created by *McGovern.* When *Wintermyer* corrected this void, as a matter of jurisprudence, *see id.* at 487, it also ensured that our interpretation of the review standard in Section 704 became harmonious with the Act's reasoned decision requirement. *See id.* at 486–87.

---

5.  Judge Friedman, who authored the panel opinion in *Hahnemann,* also authored the dissenting opinion below in the case *sub judice.*

■ In any event, and perhaps not coincidentally, the statute's central requirements—*e.g.,* to issue a "reasoned decision" which "adequately explains" a credibility determination in this particular instance—are broadly stated and no specific remedy is set forth for a failure to comply. Under this statutory construct, it devolves upon the courts to determine what exactly is required of a WCJ to facilitate judicial review and what remedy should follow from a failure to issue a reasoned decision. These, of course, are questions with which we as jurists are well acquainted. Since the determination of exactly what is necessary to provide a basis for effective judicial review under the statute ultimately rests with the judiciary, there is no valid separation of powers concern.

The appropriate standard of articulation in workers' compensation cases must account for both the unique nature of these sorts of proceedings and the specific question that is at issue. One of the virtues of the proceedings is their relative informality, an informality which helps to facilitate speedier decisions in a field where the volume of cases is heavy. Section 422(a) helps to create that informality, as it directs that neither the WCAB nor WCJs be "bound by the common law or statutory rules of evidence in conducting any hearing or investigation." 77 P.S. § 834. Subsections 422(b)–(d) of the Act make further provision for less formal adjudications by allowing for the admission of depositions, hospital records and other medical data in appropriate instances. 77 P.S. § 835. It is typical that this case, like most of the Commonwealth Court cases discussed above, proceeded upon the basis of deposition testimony, and not live testimony, of the medical experts.[6] Since this relative informality is essential to the efficient functioning of workers' compensation litigation, this Court must be sensitive in not imposing an unwieldy standard of articulation upon the adjudication process.

6. The Commonwealth Court has noted that "[a] proper cause for accepting the medical expert's deposition pursuant to Section 422 of the Act is to avoid the physician having to take time from his busy schedule to appear in person." *Otis Elevator Co. v. Workers' Compensation Appeal Bd. (Harding),* 651 A.2d 667, 670 n. 4 (Pa.Cmwlth.1994). The *Otis Elevator* court held, however, that a party had a right to present the live testimony of a willing medical expert.

■ Accordingly, we hold that a decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the WCAB without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less.

■ Turning to the specific question at issue, the Act requires that, in rendering a reasoned decision in a case with conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." In workers' compensation cases, the WCJ functions in a manner similar to the trial judge in a bench trial. Thus, it has long been recognized that the WCJ has the exclusive authority to make findings of fact and credibility determinations. "The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Thompson v. Workers' Compensation Appeal Bd. (USF & G Co. and Craig Welding & Equipment Rental)*, 566 Pa.420, 781 A.2d 1146, 1150 (2001), *citing LTV Steel v. Workers' Compensation Appeal Bd. (Mozena)*, 562 Pa.205, 754 A.2d 666, 676 (2000) and *Bethenergy Mines v. Workmen's Compensation Appeal Bd. (Sebro)*, 132 Pa.Cmwlth.288, 572 A.2d 843, 844–45 (1990). The deference generally accorded to fact-finders in disputed proceedings is a function of the comparative advantage the fact-finder has over any reviewing body in making assessments that may depend, *inter alia,* upon the demeanor of the witnesses.

"Many factors may affect the probative value of testimony, such as age ... intelligence, experience, occupation, demeanor or temperament of the witness. A trial court or jury before whom witnesses appear is at least in a position to take note of such factors. An appellate court has no way of doing so. It cannot know whether a witness answered some questions forthrightly but evaded others. It may find an answer convincing and truthful in written form that may have sounded unreliable at the time it was given. A well-phrased sentence in the record may have seemed rehearsed at trial. A clumsy sentence in the record may not convey the ring of truth that attended it when the witness groped

his way to its articulation. What clues are there in cold print to indicate where the truth lies? What clues are there to indicate where the half-truth lies?"

*Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 168 (1978), *quoting* R. Traynor, *The Riddle of Harmless Error* 20–21 (1970). *See Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 703 (2002) (noting "bedrock principle that questions of credibility are exclusively for the fact-finder") (citations omitted).

■ One potential difficulty with the statutory directive is that, when the issue involves the credibility of contradictory witnesses who have actually testified before the WCJ, it is appropriate for the judge to base his or her determination upon the demeanor of the witnesses. In such an instance, there often is not much to say, nor is there a need to say much, in order for a reviewing body to determine that the decision was reasoned. Such a credibility determination may involve nothing more than the fact-finder's on-the-spot, and oftentimes instinctive, determination that one witness is more credible than another. The basis for the conclusion that certain testimony has the "ring of truth," while other testimony does not, may be difficult or impossible to articulate—but that does not make such judgments invalid or unworthy of deference. To the contrary, people routinely undertake affairs of consequence based upon their judgment of the credibility and reliability of others, or their assessment of the mettle and character of the persons with whom they are dealing. Accordingly, in a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately "reasoned." *See Story, supra.* We do not believe that the statute, as amended, was intended to mandate that adjudicative officers explain inherently subjective credibility decisions according to some formulaic rubric or detailed to the "nth degree."

■ The complication here—and in many cases like this—is that, although appellant appeared live before the

WCJ, the medical experts, whose evidence concerning the persistence of appellant's work injury was conflicting, testified only by deposition. Since the WCJ did not observe the respective demeanors of the experts, her resolution of the conflicting evidence cannot be supported by a mere announcement that she deemed one expert more "credible and persuasive" than another. This is not to say that the WCJ must actually observe competing witnesses on the stand in order to assess their relative credibility. To the contrary, as the cases that we have canvassed above demonstrate, there are countless objective factors which may support the decision to accept certain evidence while "rejecting or discrediting competent [conflicting] evidence." For example, an expert witness's opinion may be based upon erroneous factual assumptions, *see Supervalu, supra;* or an expert may have had less interaction with the subject, *see PEC Contracting, supra;* or the interaction was in a less timely fashion, *see Roccuzzo, supra;* or the expert may betray a bias or interest in the matter. *See PEC Contracting, supra.* In addition, an expert witness may be unqualified or less qualified than the opposing party's expert; or may be impeached with inconsistencies or contradictions in his or her testimony or reports; or may be impeached in some other convincing fashion. But these are relevant factors which are readily capable of identification and easy articulation by the WCJ. The point is that, absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.[7]

In the instant matter, the WCJ heard appellant's live testimony and thus was in a position to render a demeanor-based assessment of his credibility—albeit, since the WCJ adverted

---

7. It bears noting that a WCJ faced with proffered deposition testimony is authorized to subpoena relevant witnesses to testify. 77 P.S. § 833. Thus, in an instance where the credibility issue is particularly difficult of resolution by objective means, there is an avenue by which the WCJ can take steps to more reliably adjudicate the issue. In addition, under Commonwealth Court authority, a party may request that the WCJ hear the live testimony of a witness. *See Otis Elevator, supra.*

to her "review of the evidentiary record as a whole," it is not clear whether her rejection of appellant's testimony was based simply upon demeanor. In any event, although the WCJ's summarization of the witnesses' testimony demonstrates her grasp of the whole evidentiary record, the WCJ articulated no objective basis for deeming the deposition opinions of Dr. Williams to be "more credible and persuasive" than those of Dr. Fabian. Although we can imagine reasons why the WCJ might have been more convinced by Dr. Williams' opinions, there are arguments to be made in favor of Dr. Fabian's opinions as well; more importantly, the reasons we might identify are not necessarily those which were in the mind of the WCJ upon rendering her decision. Absent some articulation of the basis for her conclusion on credibility, we agree with the Commonwealth Court dissent in this case that the credibility decision does not meet the standard found in Section 422(a). Accordingly, we vacate the Commonwealth Court's order and remand this matter to the WCJ to issue an amended decision under Section 422(a), explaining the basis for her credibility determination. Whether that articulation generates a further, legitimate complaint given the narrow standard of review may await the outcome of the articulation.[8]

8. Employer argues that it is absurd to remand for articulation of the basis of a credibility decision because, once that articulation is made, it will be unreviewable. Brief of Appellee, 19–20. But Employer's argument assumes that an articulation of the reasons for a decision cannot shape the decision itself or reveal legal error. One of the virtues of the legal profession—and it is a virtue that certainly applies to the judicial decision-making process—is that it depends upon reasoned articulation. Views are oftentimes shaped, molded, and changed in the very process of articulation. In addition, a judge's expression of the basis for a decision may reveal distinct legal error, as in the misapprehension of a governing standard or a material fact. As the Commonwealth Court noted in the *PEC Contracting* case:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.

717 A.2d at 1088–89. Accordingly, we will not assume that the process of articulation is pointless or "absurd."

Vacated and remanded for proceedings consistent with this Opinion.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NEWMAN files a concurring and dissenting opinion.

JUSTICE NEWMAN, CONCURRING AND DISSENTING.

I concur in the result reached by the Majority. I write separately to express my concern that, permitting the Workers' Compensation Judge (WCJ) to declare that a particular witness is simply credible or not credible, without setting forth in some detail the basis for the findings of fact, fails to effectuate the purpose of the statute and neither results in a reasoned decision nor does it facilitate appellate review.

The credibility of a witness is a "subjective amorphous quality, often defined as much by the preconceptions of the persons who perceive the witness as by the witness' personal characteristics." 81 Am.Jur.2d Witnesses § 1027. Furthermore, the credibility of a witness may be affected by factors such as the credibility of other witnesses in this case, the plausibility of the theory that the witness is meant to support, the order in which witnesses are called, and the character and preconceptions of the fact finder. *Id.* Thus, to justify the use of any witness, the witness must be competent; the witness must be credible; and, finally, the witness must be believed.

The issue of witness credibility is, in actuality, a bifurcated one. There are two components to a finding of credibility—observational credibility and substantive credibility. Observational credibility goes to the demeanor of the witness when testifying and requires that the fact finder actually be present to observe it. "The manner in which a witness tells his [or her] story; the advantages he [or she] appears to have had for gaining accurate information on the subject, the accuracy and

retentiveness of his [or her] memory; his [or her] capacity for consecutive narration of acts and events; his [or her] apparent frankness and intelligence, and numerous other considerations" animate the formulation of witness credibility determinations. *Darner v. S.E. Idaho In–Home Svcs.*, 122 Idaho 897, 841 P.2d 427 (1992). This is the "demeanor credibility," concerning which the Majority deems no explanation or analysis is required and asserts that a mere visceral determination is sufficient to satisfy the "reasoned decision" requirement of Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834. Substantive credibility, however, may be affirmatively judged on the grounds of inaccuracies and conflicting facts contained in the testimony of the witness **and** is not addressed by the Majority.

The findings of the WCJ must assure the reviewing court that all of the evidence has been examined by the WCJ and that there is ample support for the resultant findings. A reviewing court requires no more than assurance from the WCJ that he or she has made his or her findings from the entire record, that these findings are supported by substantial evidence, and that he or she has sufficiently articulated the reasons for arriving at these conclusions, including some basis for its credibility determinations. Justice Cappy, now Chief Justice Cappy, in his responsive Opinion in *Bowman v. Dept. of Envtl. Res.*, 549 Pa. 65, 700 A.2d 427, 431 (1997) (Cappy, J. concurring and dissenting), made the following observation, applicable to the instant matter:

> An agency opinion needs to contain sufficiently detailed findings of fact, together with a coherent legal discussion, so that the Commonwealth Court can perform a meaningful review. Any less would frustrate the legislative intent, in addition to providing agency panels with a means of nullifying the effect of legislation, because it would enable an agency to shield its decisions from review by drafting opinions in generalized and conclusory terms.

The suggestion that a WCJ may insulate his findings from review by denominating them credibility determinations is a very real concern. While factors other than demeanor and

inflection go into the decision of whether or not to believe a witness, failure to articulate the basis for a finding of credibility leaves the reviewing court adrift and the parties at the mercy of the WCJ. This is so because it has become a bedrock principle of law that credibility determinations delivered by fact finders are sacrosanct and may not be disturbed on appeal. *See, e.g., McCauley v. Imperial Woolen Co.,* 261 Pa. 312, 104 A. 617 (1918). The task of the reviewing court is facilitated where documents or objective evidence contradict the story of the witness; or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. Where such factors are present, an appellate court is permitted to find clear error, even in a finding purportedly based on a credibility determination. But where such factors are not present, there is little to review if no rationale is provided for the credibility determinations of the fact finder. Further, a reviewing court is unable to subsequently ascertain whether the Board properly performed its review function if it is unable to understand the rationale underpinning the decision of the WCJ.

The WCJ cannot reject evidence for no reason or for the wrong reason. In my view, a WCJ may not make credibility determinations solely on "instinct." An explanation from the WCJ, at a minimum, to explain those portions of the testimony found to be credible and/or those aspects of demeanor that formed the basis for a credibility finding is required so that a reviewing court can determine whether the reasons for acceptance or rejection were improper. It is beyond cavil that a simple credibility determination does not satisfy the substantive purposes of the fact-finding requirement. A statement that the WCJ finds a witness credible is no more enlightening than a statement that a claimant is not permanently disabled. Specific findings of fact are essential to an effective system of administrative law. "The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of adminis-

trative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." *Perez v. United States Steel Corp.*, 426 N.E.2d 29 (Ind.1981).

Both a claimant and the employer have a legal right to know the evidentiary bases upon which the ultimate finding rests. That responsibility initially lies with the administrative agency, which must enter specific findings of basic fact to support its findings of ultimate fact and the resulting conclusions of law. The statutory requirement of a reasoned decision serves to protect against careless or arbitrary administrative action. The requirement that findings of basic fact be entered ensures that a careful examination of the evidence, rather than visceral inclinations, will control an agency's decision.

There are cogent and strong reasons for having a [reasoned decision] requirement in Pennsylvania. They include these: (i) the Administrative Agency Law requires it; (ii) failure to provide an adequate explanation for a [WCJ's] decision leaves the loser with an impression of arbitrariness and unfairness and a legacy of bitterness and alienation; (iii) if such failure becomes routine, it will alienate the Bureau Of Workers' Compensation from the community of interest which it was created to serve; (iv) a statement of reasons by the [WCJ], who is the fact finder, will aid the appellate reviewer to do his/her job; (v) clear reasons for decisions which deliver required but unjust results can focus disapproval on the law's folly and promote its reform; (vi) fully reasoned decisions will enable parties to understand the issues they must confront, to appreciate the kind of evidence that the tribunal will want to hear and, by permitting litigants to make informed judgments as to chances of success, discourage inappropriate applications or appeals; (vii) adequate reasons provide future litigants with the means for invoking the principle of relative fairness[,] which holds that like cases should lead to like results; (viii) decision writing with reasons has an important role in the decision-making process by causing the adjudicator to think more clearly and to analyze more carefully; (ix) full written reasons provide a means of reviewing the decision-making

process at a later date and give substantive content to the right of appeal.

Stephen I. Richman, Reasoned Decisions in Workers' Compensation Cases, Pa. Bar Assoc. Quarterly, 63 Pa.B.A.Q. 32, 33 (January 1992).

When the fact finder does not reveal the factual basis for his or her ultimate determination, which is the quintessential purpose of the requirement that administrative agencies enter specific findings of fact as part of their orders, the statutory Workers' Compensation scheme is frustrated and the parties are dealt a disservice. I would hold that, if the factual basis for the decision includes a determination based substantially on the credibility of a witness, the WCJ must identify whether reliance was placed on observational credibility and/or substantive credibility and provide any specific evidence of the observed demeanor, manner, or attitude of the witness, or any perceived inconsistencies or lack thereof. I would also find that a reviewing court should only accord great weight to a determination of credibility that identifies the factors that support it. Accordingly, I dissent from that portion of the Majority Opinion that permits a WCJ to simply set forth credibility determinations without accompanying rationale.