**U.S. STEEL MINING COMPANY, L.L.C., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GORETSKY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 11, 2005.

Decided May 18, 2005.

Christopher Pierson, Pittsburgh, for petitioner.

Debra Henry, Belle Vernon, for respondent.

BEFORE: FRIEDMAN, J., and LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

U.S. Steel Mining Company, L.L.C., (Employer) petitions for review of the March 24, 2004, order of the Workers' Compensation Appeal Board (WCAB) denying Employer's petition for reconsideration of the WCAB's August 28, 2000, order that affirmed the workers' compensation judge's (WCJ) grant of fatal claim benefits to Julia Goretsky (Claimant). We affirm.

Walter Goretsky (Decedent) worked for Employer as a coal miner for approximately forty-eight years, until, at age sixty-two, Decedent stopped working due to problems with breathing, coughing and fatigue. By decision dated April 6, 1981, Decedent was awarded benefits for work-related occupational disease based on the determination that he was totally and permanently disabled by coal worker's pneumoconiosis. Decedent died on April 29, 1996, at age eighty-one. On July 10, 1996, Claimant, Decedent's widow, filed a fatal claim petition alleging that Decedent died as a result of exposure to coal and other hazardous dust while employed by Employer. Employer filed a timely answer denying these

allegations, and hearings were held before a WCJ. (WCJ's Findings of Fact, Nos. 1–3.)

At the October 17, 1996, hearing, Claimant testified that she was married to and living with Decedent at the time of his death and was dependent on him for support. Claimant also offered the deposition testimony of Cyril Wecht, M.D., who is board-certified in anatomic, clinical and forensic pathology. Dr. Wecht, who performed the autopsy on Decedent, testified that the immediate cause of Decedent's death was a ruptured abdominal aortic aneurism with retroperitoneal hemorrhage. Dr. Wecht also opined that there were two significant secondary causes of Decedent's death: hypertensive and arteriosclerotic cardiovascular disease and coal workers' pneumoconiosis. (R.R. at 120a–21a, 127a.)

As to the contribution of the coal workers' pneumoconiosis, Dr. Wecht agreed that Decedent's aneurism was not caused in any way by the pneumoconiosis, and the pneumoconiosis did not directly cause the leakage and hemorrhage. However, Dr. Wecht explained that, because of the obstructive pulmonary disease,[1] Decedent's heart had to work harder to pump blood through the lungs, and this increased burden produced more pressure in the aorta than otherwise would have occurred. According to Dr. Wecht, that increased strain, leading to increased work and increased pressure on the heart, all due to Decedent's lung disease, led to a faster progression of the bulging of the aneurysm and an earlier leakage of blood. Therefore, Dr. Wecht opined that the coal workers' pneumoconiosis hastened Decedent's death because, although the aneurysm would have burst eventually even absent the coal workers' pneumoconiosis, the rupture would not have occurred when it did without the lung disease contributing to and aggravating the overall cardiovascular pathology. (R.R. at 129a–31a, 141a.) (WCJ's Findings of Fact, Nos. 4–6.)

Employer submitted the deposition testimony of Everett Oesterling, Jr., M.D., who is board-certified in anatomical pathology, clinical pathology and nuclear medicine. Based on a review of the autopsy slides, Dr. Oesterling testified that there was evidence of coal workers' pneumoconiosis in Decedent's lung tissue, as well as centrilobular emphysema that was unrelated to Decedent's mine dust exposure. With regard to cause of death, Dr. Oesterling opined that Decedent had very significant arteriosclerosis, that his ruptured aortic aneurysm and hemorrhaging was purely a result of his hypertensive and arteriosclerotic vascular disease and that Decedent's respiratory impairment played no role in this diagnosis or Decedent's ultimate demise. (WCJ's Findings of Fact, No. 8; R.R. at 52a–55a, 58a, 64a.) Dr. Oesterling testified further that Decedent would have died at the same time and in the same manner even if he had not contracted coal workers' pneumoconiosis. (R.R. at 63a.)

Accepting Dr. Wecht's testimony over that of Dr. Oesterling, the WCJ concluded that Claimant had met her burden of proving that coal workers' pneumoconiosis was a substantial contributing factor in Dece-

---

1. Decedent's death certificate listed chronic obstructive pulmonary disease as a significant condition contributing to death. (R.R. at 38a.) On cross-examination, Dr. Wecht conceded that obstructive pulmonary disease and coal workers' pneumoconiosis are not synonymous; however, Dr. Wecht explained that he knew the chronic obstructive pulmonary disease listed on the death certificate actually referred to coal workers' pneumoconiosis, since he gave the diagnosis to the doctor who prepared the death certificate. (WCJ's Findings of Fact, No. 7.)

dent's death. In crediting Dr. Wecht, the WCJ offered the following explanation.

Both doctors made substantially the same factual findings and the difference between them was that Dr. Wecht found that but for the pneumoconiosis that the [Decedent] would not have died when he did, and Dr. Oesterling stated that the pneumoconiosis made no contribution whatsoever to the [Decedent's] death. *The closely reasoned and logical and sequential opinions of Dr. Wecht as supported by the evidence and his reasoning are ascribed more credibility by this Workers' Compensation Judge than the conclusions of Dr. Oesterling which he himself called into question when he made the admissions above referred to during his cross-examination.*[2] In addition, Dr. Wecht's conclusions are much more supported by the evidence than the conclusions of Dr. Oesterling.

(WCJ's Findings of Fact, No. 13) (emphasis added).

Employer appealed the WCJ's decision to the WCAB, arguing that the WCJ failed to comply with the reasoned decision requirement set forth in section 422(a) of the Workers' Compensation Act (Act)[3] where the record did not support the WCJ's rationale for finding Dr. Wecht's testimony more credible than that of Dr. Oesterling. Specifically, Employer challenged the guage which further detailed the components of a reasoned decision and required more meticulous decision-writing by WCJs. Section 422(a) of the Act, as amended in 1996, now provides:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies *and state the reasons for accepting it* in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added).

2. The WCJ was referring to the following:

On cross-examination, Dr. Oesterling made some statements that detracted from his conclusions that the decedent's respiratory process was not related to his ultimate demise. As he stated on pages 28 and 29 of his deposition as follows:

Q. And we can agree that moderately severe coal workers' pneumoconiosis can compromise lung function?

A. Now, if you're asking that—

Q. In general, doctor?

A. The term that you asked, I would have to say, yes, moderately severe coal workers' pneumoconiosis can indeed product [sic] respiratory distress; that's correct.

Dr. Oesterling further stated under cross-examination Page 31 of his deposition as follows.

Q. Doctor, then a reading of 1/1 then, could we agree, could it ever be a cause of death?

A. Could it cause it in and of itself? I would doubt that very seriously. Can it contribute? I suppose significant changes of that nature could contribute some to death, yes. Some deaths.

(WCJ's Findings of Fact, No. 9.)

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Section 422(a) of the Act, which addresses the WCJ's responsibility in deciding workers' compensation cases, was amended in 1993 to include a reasoned decision requirement. In 1996, the legislature again amended section 422(a), adding lan-

WCJ's finding that Dr. Wecht's opinions were more supported by the evidence in the record than the conclusions of Dr. Oesterling and the WCJ's finding that Dr. Oesterling's testimony on cross-examination detracted from his credibility and lent credibility to Dr. Wecht's testimony.

On August 28, 2000, the WCAB issued a decision affirming the WCJ. In doing so, the WCAB noted that the WCJ provided no support for his position that Dr. Wecht's testimony was more supported by the record, stating "The WCJ did not explain what evidence supported Dr. Wecht's opinions, and we were unable to identify the evidence in the record to which the WCJ refers." (WCAB's op. of 8/28/00 at 8, R.R. at 28a.) Further, the WCAB agreed that the WCJ took Dr. Oesterling's cross-examination testimony out of context and that the cited testimony "does not support the WCJ's conclusions for discrediting [Dr. Oesterling's] testimony." (WCAB's op. of 8/28/00 at 8–9, R.R. at 28–29a.) The WCAB also noted that the WCJ did not explain how or why Dr. Wecht's opinion was more logical or closely reasoned than Dr. Oesterling's opinion. (*Id.* at 9, R.R. at 29a.) Nevertheless, the WCAB concluded that the WCJ adequately explained the basis for his decision.[4] Commenting that the evidentiary record contained nothing more than the prosecutor's report and the two pathologists' opinions, the WCAB summarized its view as follows:

A reading of both opinions finds them equally reasoned, but just different. Additional diagnostic information, had it been available, would have been useful

to strengthen one opinion over the other. Nevertheless, the WCJ had to pick one doctor's opinion, and he selected Dr. Wecht. We can only infer from the WCJ's Decision that he found Dr. Wecht's opinion more logical, because the WCJ believed Dr. Wecht's opinion that the pneumoconiosis affected the Decedent's lung function and led to the abdominal hypertension as opposed to Dr. Oesterling's opinion that the hypertension stemmed from arteriosclerosis impacting on the kidneys producing angiotension which in turn increases the blood pressure.

(WCAB's op. of 8/28/00 at 9–10, R.R. at 29a–30a.) The WCAB recognized that its function is not to determine whether the WCJ credited the most reasonable opinion, but only to determine whether the WCJ's opinion was based on substantial, competent evidence, and the WCAB concluded that because Dr. Wecht's testimony supported the WCJ's award of benefits, it must affirm.

On October 13, 2000, Employer filed a petition for reconsideration by the WCAB, renewing its assertion that the WCJ failed to issue a reasoned decision and pointing out that the WCAB, itself, identified the WCJ's omissions. In a decision dated March 24, 2004, the WCAB denied Employer's reconsideration petition. The WCAB explained that, because the record here was devoid of the diagnostic test results and medical history potentially necessary to determine which doctor was more logical or medically correct, "this particular case was one in which the WCJ was

---

4. The WCAB relied on two Commonwealth Court opinions, *Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries)*, 128 Pa.Cmwlth.1, 562 A.2d 950 (1989), and *Daniels v. Workers' Compensation Appeal Board (Trisate Transport)*, 753 A.2d 293 (Pa. Cmwlth.2000), *vacated by* 574 Pa. 61, 828 A.2d 1043 (2003), for the proposition that, to

be "reasoned," a WCJ's decision must contain findings and reasons for the adjudication but that her failure to explain specifically why she rejected certain testimony is not fatal to her adjudication and does not preclude effective appellate review. (WCAB's op. at 7–8, R.R. at 28a–29a.)

required to almost base his determination on the credibility of the witnesses," (WCAB op. of 3/24/04 at 2, R.R. at 33a), and the WCJ did not err in favoring one reasoned and logical medical opinion over a conflicting medical opinion that also was reasoned and logical. Employer now petitions this court for review of the WCAB's denial of reconsideration.[5]

Employer argues that the WCAB abused its discretion in denying Employer's petition for reconsideration where the WCJ failed to identify, and the WCAB could not identify, *objective* reasons for crediting Dr. Wecht's opinion over the contrary opinion of Dr. Oesterling. Employer contends that in holding that the WCJ provided a reasoned decision, the WCAB ignores the requirements of section 422(a) of the Act and fails to apply the appropriate reasoned decision standard set forth by our supreme court in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003).

In *Daniels,* the supreme court considered the WCJ's grant of a termination petition in a case involving disputed expert medical testimony. The WCJ, after summarizing the conflicting testimony of the two doctors, simply stated that he found the employer's expert to be more credible and persuasive than the claimant's expert based upon a review of the evidentiary record as a whole. In considering whether this was sufficient to constitute a "reasoned" decision, the supreme court first held generally that "a decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the WCAB without further elucidation [6] and if it allows for adequate review by the appellate courts under applicable review standards." *Id.* at 76, 828 A.2d at 1052. Then, turning to the specific question at issue, i.e., whether the WCJ had adequately explained the reasons for rejecting or discrediting competent evidence, the supreme court indicated that, when witnesses testify only by deposition, "resolution of the conflicting evidence cannot be supported by a mere announcement that [the WCJ] deemed one expert more 'credible and persuasive' than another." [7] *Id.* at 78, 828 A.2d at 1053. The supreme court held that, in such cases, "some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.*

Employer argues that the fact that the record was devoid of any objective *evidence* to support one expert witness' opin-

5. The WCAB has broad discretion to grant a petition for rehearing pursuant to section 426 of the Act, 77 P.S. § 871. *Chadwick v. Workmen's Compensation Appeal Board (Benjamin Franklin Hotel)*, 132 Pa.Cmwlth.525, 573 A.2d 652 (1990), *appeal denied*, 527 Pa. 604, 589 A.2d 694 (1990). A WCAB's decision to grant or deny a request for rehearing will be reversed only when the WCAB has abused that discretion. *Dominijinni v. Workmen's Compensation Appeal Board (DeCarlo)*, 135 Pa. Cmwlth.204, 581 A.2d 245 (1990).

6. Employer points to the statement in the WCAB's decision that "the WCJ did not explain what evidence supported Dr. Wecht's opinions, *and we were unable to identify the evidence in the record to which the WCJ re-*

fers." (WCAB op. of 8/28/00 at 8, R.R. at 28a) (emphasis added). According to Employer, this statement clearly demonstrates that the WCJ's decision was not reasoned because it did not allow for adequate review by the WCAB without further elucidation. *Daniels.*

7. Regarding the credibility of contradictory witnesses who have actually testified before the WCJ, the supreme court held that it is appropriate for the WCJ to base his or her determination upon the demeanor of the witnesses. Thus, a mere conclusion as to which witness was deemed credible could be sufficient to render the decision adequately "reasoned." *Daniels.*

ion over another cannot, as suggested by the WCAB, excuse the fact-finder from identifying objective *reasons* for his credibility determination. (Employer's brief at 18.) We agree with this statement;[8] however, we conclude that the WCJ did provide such reasons here.

In attributing more credibility to the opinions of Dr. Wecht, the WCJ explained that he found Dr. Wecht's opinions "closely reasoned, logical and sequential," and the WCJ found that Dr. Oesterling made admissions during cross-examination that called his conclusions into question. The WCJ further illustrated his reasons for selecting the opinion of Dr. Wecht over that of Dr. Oesterling by quoting the specific sections of each doctor's testimony that formed the basis for the WCJ's findings. Unlike the WCJ in *Daniels,* the WCJ here did not summarize the differing expert testimony and then select one as the more credible without offering *any* explanation. To the contrary, because the WCJ articulated an actual objective basis for his credibility determination, we conclude that the WCJ's decision was a "reasoned" one which facilitated effective appellate review. *Daniels.*

Accordingly, for these reasons, we affirm.

---

8. We specifically reject the WCAB's decision to the extent that it can be interpreted to hold otherwise. As the court in *Daniels* recognized, there are countless objective factors beyond medical test results and histories that may support a WCJ's decision to accept certain evidence while rejecting or discrediting competent conflicting evidence.

1. It states:
   All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result

*ORDER*

AND NOW, this 18th day of May, 2005, the order of the Worker's Compensation Appeal Board, dated March 24, 2004, is hereby affirmed.

DISSENTING OPINION BY Judge LEAVITT.

I must respectfully dissent. The WCJ was understandably confounded by a unique confluence of events in this case. Decedent's medical history was virtually devoid of any relevant evidence, while two preeminent pathologists offered equally persuasive, and diametrically opposed, opinions on causation. Notwithstanding these exceptional circumstances, the WCJ was still duty-bound to issue a "reasoned decision" pursuant to Section 422 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.[1] As our Supreme Court has explained, a WCJ faced with conflicting medical expert testimony cannot merely announce that he "deemed one expert more 'credible and persuasive' than another." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 574 Pa. 61, 78, 828 A.2d 1043, 1053 (2003).

[A]bsent the circumstance where a credibility assessment may be said to have

---

was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.*

77 P.S. § 834 (emphasis added).

been tied to the inherently subjective circumstance of witness demeanor, *some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.*

*Id.* (emphasis added).

In this case, the WCJ found Dr. Wecht to be more credible than Dr. Oesterling and described Dr. Wecht's opinions as "closely reasoned and logical and sequential" and "much more supported by the evidence." WCJ Opinion at 7; Reproduced Record at 16a (R.R. ___).[2] Stated otherwise, this was merely an announcement that the WCJ found Dr. Wecht's opinions to be more persuasive. On review, the Board pointedly criticized the WCJ for failing to identify the evidence that supported Dr. Wecht's opinions and then went on to conclude there was no such evidence in the record. The Board continued that "the WCJ does not explain how or why Dr. Wecht's opinion is more logical." Board Opinion at 9; R.R. 29a. Nevertheless, the Board upheld the WCJ's credibility determination, noting that he "had to pick one doctor's opinion," and then affirmed the WCJ's pick because, in the Board's view, it was supported by substantial evidence. *Id.*

Unlike the majority, I do not believe that the Board was free to ignore the obvious deficiencies in the WCJ's decision, especially since Employer had lodged a challenge on that very issue. Whether the WCJ's decision was supported by substantial evidence is of no moment. The fact remains that the decision clearly fell short of the reasoned decision standard contained in Section 422 of the Act and explained more fully by our Supreme Court in *Daniels.* A WCJ cannot simply "pick one" when the credibility determination is difficult. I recognize that the exceptional circumstances of this case may test the limits of the *Daniels* standard. However, I think it unwise to allow the exception to swallow the rule where a WCJ is confronted with a particularly difficult record.[3]

Based upon the foregoing, I would reverse the Board's order denying reconsideration and remand for further consideration in light of *Daniels.*

---

2. The majority accepts the WCJ's finding that Dr. Oesterling made admissions during cross-examination that called his credibility into question. The Board rejected this finding, however, noting that Dr. Oesterling stated only in general terms that moderately severe coal workers' pneumoconiosis can produce respiratory impairment and in some instances contribute to death. Dr. Oesterling in no way admitted that Decedent died as a result of pneumoconiosis or respiratory distress. When read in its proper context, this testimony does not support the WCJ's finding that Dr. Oesterling was somehow less credible.

3. It bears noting that a WCJ faced with seemingly irreconcilable, conflicting testimony is empowered under the Act to subpoena witnesses and hear live testimony in order to make an objective evaluation. Section 418 of the Act, 77 P.S. § 833. The WCJ in this case would have been well-advised to avail himself of these statutory mechanisms rather than flipping a proverbial coin.