IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph DeMarco,                          :
                    Petitioner           :
                                         :
          v.                             : No. 77 C.D. 2015
                                         : Submitted: January 15, 2016
Workers' Compensation Appeal             :
Board (Marriott Hotel Services, Inc.),   :
                    Respondent           :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: February 5, 2016


          Joseph DeMarco (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) decision denying his petition to reinstate
compensation benefits, finding it barred by the doctrine of res judicata. For the
reasons that follow, we affirm.


**I.**

          On February 4, 2008, Claimant, who had been employed by Marriott
Hotel Services, Inc. (Employer) as a buffet cook for approximately 14 years,
sustained injuries to his right knee and, to a lesser extent, his left knee after

slipping and falling on water which was on a brick floor covered with plastic wrapping and paper while in the course of his employment. In June 2008, Dr. Michael Ciccotti (Dr. Ciccotti), Claimant's surgeon, performed a partial medial menisectomy on Claimant's right knee.

After Employer issued a notice of compensation denial, Claimant filed a claim petition,[1] alleging disability for a 52-week period due to injuries sustained while working. In July 2009, a WCJ granted the claim petition, finding that Claimant sustained his burden of proving the elements necessary to support an award of compensation and was thereby entitled to compensation[2] for 52 weeks, beginning on the date of the injuries. Employer appealed, and the Board vacated and remanded the matter to the WCJ to issue a well-reasoned decision under Section 422(a) of the Workers' Compensation Act (Act)[3] because the WCJ: failed

---

[1] In a claim petition proceeding, a claimant bears the burden of proving all of the elements necessary to support the award of compensation benefits, including establishing a causal relationship between the claimant's injury and his disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. Cmwlth. 1993).

[2] The WCJ held that: 1) Claimant is entitled to $403.50 per week, based on an average weekly wage of $486.44; 2) Claimant's indemnity benefits are suspended after the 52 weeks have elapsed; 3) Employer is entitled to a credit for any wages received during this period of time; 4) Claimant is entitled to payment of all reasonable, necessary and related medical bills; 5) Claimant's counsel's litigation costs are reasonable and necessary; and 6) Claimant is entitled to a ten percent per annum interest on all deferred compensation, including medical bills.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708. Section 422(a) of the Act states, in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can

**(Footnote continued on next page…)**

2

to make any credibility determinations; did not provide a discussion of any medical exhibits despite finding that Claimant's medical evidence establishes that he suffered an injury with disability; and failed to explain how medical witnesses knew that Claimant's disability would last 52 weeks or how he would fully recover in exactly 52 weeks.

In September 2010, a different WCJ on remand[4] granted the claim petition in part, awarding Claimant compensation for an injury in the nature of a tear in the right medial meniscus for a period from February 4, 2008, to December 4, 2008. The WCJ found credible Claimant's testimony that: he sustained a work injury on February 4, 2008, but concluded that Claimant fully recovered from his work injury as of December 4, 2008; the work injury did not aggravate any pre-existing degeneration; and Claimant's continued symptoms were secondary to

---

**(continued…)**

> determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

[4] Due to WCJ Devlin's pending retirement at the time, the remand was reassigned to WCJ Bulman.

obesity and pre-existing arthritic changes in his knee joints and not the work injury. Claimant appealed to the Board and the Board affirmed, finding a review of the record to reveal that Judge Bulman's findings were supported by substantial, competent evidence.

## II.

In September 2012, Claimant filed a petition to reinstate compensation benefits, alleging that as of March 10, 2010, he experienced a "[w]orsening of [c]ondition," that the injury had caused a "[d]ecreased [e]arning [p]ower," and that he "has had a recurrence of compensable disability due to his work injury. [The] [d]isability has increased and recurred due to a change in [his] physical condition." (Reproduced Record, [R.R.] at 25a.)

Before a third WCJ,[5] Claimant testified that prior to his work injury in February 2008, he experienced no problems with his right knee. He testified that although he was deemed fully recovered as of December 4, 2008, around March 2010, his right knee "started to flare back up again. It got swollen, it was hard to walk, [and he] couldn't stand up long." (R.R. at 44a.) He stated that he then consulted Dr. Norman B. Stempler (Dr. Stempler) on March 10, 2010, per his attorney's recommendation, and underwent approximately six months of physical therapy which was discontinued because it did not help. Claimant testified that due to fluid in his knee, Dr. Stempler referred him to Dr. Ira Sachs (Dr. Sachs), an orthopedic surgeon, who drained his knee.

---

[5] The petition to reinstate compensation benefits was assigned to WCJ Sandra Craig.

4

Claimant further testified that from March 10, 2010, until present day, he has not felt physically capable of returning to his employment as a buffet cook because his position requires him to stand all day and walk around.[6] He stated that he spent at least eight hours per day on his feet, sometimes nine hours per day if he did overtime. He indicated that he may be required to lift 40 pounds throughout the day to carry items to the buffet. Claimant testified that he had not worked anywhere from December 8, 2008, onward. He stated that, as he understood, he would require knee replacement surgery. He testified that his medical issues include difficulty standing up, walking, kneeling and swollen knees. He further stated that he can no longer walk the full length of a mall or go bowling, both of which he could do prior to his injury. Claimant also testified that he had Lap-Band surgery in December 2010 and, as a result, lost roughly 115 pounds.

In support of his reinstatement petition, Claimant submitted the deposition of Dr. Stempler, an expert in orthopedics, who testified that he began treating Claimant on March 10, 2010, for complaints of "pain, swelling, difficulty

---

[6] Claimant described the duties of his position as:

> I took care --- I stayed outside and made out list [sic] and so forth for people. Then some days I would work in the back going through --- back and forth and prepare lunch, normally going to the refrigerator and getting stuff and making salads and so on like that.

(R.R. at 46a.)

Additionally, Claimant testified having to "keep the buffet full," for which he would have to "carry at least a couple pans at a time to fill the station, because the station is not that close to where the prep cooks the food and stores it." (*Id.* at 47a.)

ambulating, any attempted kneeling, squatting, stooping, going up and down stairs, [and] getting up from a prolonged seated position."[7] (*Id.* at 72a.) He testified that on March 10, 2010, after a review of Claimant's pre- and post-operative MRIs[8] and a physical examination, he found that Claimant's "knee revealed the evidence of surgery. He had healed what we call arthroscopic portholes…. He had fluid in his knee. He had evidence of tenderness almost wherever palpated, medial joint line, lateral joint line. He also had evidence of quadriceps weakness and some wasting or atrophy…." (*Id.* at 74a.) Dr. Stempler stated that his working diagnosis based on his findings was that Claimant was "status post an internal derangement of the right knee and status post torn meniscus, status post traumatic osteochondritis [dissecans], which is that defect in the femoral condyle I tried to explain, and chronic ongoing inflammation of the knee, resulting in pain, fluid accumulation and limited activity." (*Id.*) As a result, Dr. Stempler recommended another MRI.

Dr. Stempler testified that the newest MRI, performed in December 2011, showed that Claimant continued to suffer an inflamed knee, joint effusion and three-compartment arthritis with degenerative joint disease of the knee, which was consistent with Claimant's history and all of Dr. Stempler's physical findings. He stated that he could determine within a reasonable degree of medical certainty

---

[7] Dr. Stempler testified that he saw Claimant 14 times between March 10, 2010, and April 8, 2013, the date of his deposition, and that he conducted a physical examination and took an interim history each time.

[8] On cross-examination, Dr. Stempler acknowledged that although he had briefly reviewed the records of Dr. Ciccotti, Claimant's surgeon, he did not recall what they said. He did, however, review the records of Dr. Sachs and Dr. Freedman, who performed an independent medical examination on Claimant in December 2012.

that Claimant's symptoms recurred and "gradually continued, expanded and accelerated, resulting in increased symptoms, inflammation, physical findings and disability." (*Id.* at 76a.) Dr. Stempler opined that the physical requirements were too demanding for Claimant to return to his job with Employer because "he remains totally disabled" and that he would not be able to return to work until he received a knee replacement. (*Id.* at 77a.) He further opined that Claimant has a recurrence of his initial injury. He testified that given Claimant's age category, that is, late 50s to early 60s, it is "quite frequent" that an injured party does not experience any problems and then has a trauma which ultimately results in knee replacement. (*Id.* at 80a.)

Dr. Stempler testified that although Claimant has lost weight since March 2008, "his knee situation hasn't changed a great deal. The more he's on it, the more it hurts, the more it swells. Swelling expands the joint, increasing the pain." (*Id.* at 81a.) He stated that Claimant's condition is worsening due to a progression of the degenerative process, thereby resulting in increased symptoms and pain. He explained that he referred Claimant to Dr. Sachs in order to calm the degenerative process by injecting a type of lubricant in the joint to give him more comfort. He testified that Claimant received a full series of injections and had some short-term relief thereafter; however, the relief was not lasting.

In support of its position, Employer offered the deposition of Dr. Kevin B. Freedman (Dr. Freedman), a board certified orthopedic surgeon whose practice predominantly involves knee and shoulder injuries, with about 90 to 95 percent of his time spent doing clinical work and part of his knee surgical practice

7

including meniscectomies. Dr. Freedman examined Claimant in December 2012 and in conjunction with his examination, Dr. Freedman took Claimant's history and reviewed Claimant's medical records, including those from Drs. Ciccotti, Stempler and Sachs and all 3 MRIs. Dr. Freedman's physical examination showed that Claimant was slightly bowlegged which, Dr. Freedman explained, can contribute to and be a result of arthritis. An examination of Claimant's right knee revealed:

> He had well-healed arthroscopic portals. His range of motion was from 0 to 145 degrees. He had patellar crepitation with range of motion with some mild medial joint line tenderness.
>
> ***
>
> [Patellar crepitation is] essentially some cracking that you can get from worn cartilage underneath the kneecap essentially from arthritis. He had some mild medial jointline tenderness with no lateral jointline tenderness. He had no ligamentous laxity with normal patellar tracking. And his neurologic exam was normal.

(*Id.* at 111a.)

He further testified that the right knee's symptoms were consistent with osteoarthritis, that there was no indication of meniscal pathology, and that there was no recurrence of the February 2008 injury. He also opined that Claimant was able to continue his work as a cook for Employer without restriction as it related to the meniscus tear. He testified that Claimant's osteoarthritis would continue to progress and he would most likely require a knee replacement at some

8

point; however, he stated with a reasonable degree of certainty that any knee replacement that Claimant may require would not be related to the work injury, but to his pre-existing osteoarthritis and progressive degeneration.

On cross-examination, Dr. Freedman clarified that although Claimant's osteoarthritis is not "totally disabling," it would cause pain when he performs his activities and he may not be able to perform his pre-injury job based on his tolerance to the pain. He opined that the degenerative process was already present after the meniscal surgery. He further acknowledged that an already present degenerative process can be accelerated if the meniscus becomes further compromised, but that it depends on several biomechanical factors as to how often that occurs. With regard to the relationship between Claimant's osteoarthritis and his partial meniscectomy, Dr. Freedman testified:

> But what we know is that he had progression of his osteoarthritis which existed before and worsened over time. [Its] cause is, you know, can be again a whole variety of factors including the fact that he weighed 300 pounds and that he, you know, has a progressive degenerative process by nature. So those are all contributing factors to the progression of his disease.

(*Id.* at 115a.)

He further acknowledged that the partial removal of a meniscus can contribute to that degenerative process, but based on the small portions of the lateral and medial menisci removed, it would not be a significant contributor to the

9

progression of degeneration. Dr. Freedman concluded that Claimant's need for a total knee replacement is causally related to his preexisting degenerative arthritis.

### III.

In October 2013, the WCJ denied and dismissed Claimant's reinstatement petition, finding initially that Claimant was precluded from pursuing the reinstatement petition because it was barred by the doctrine of res judicata, specifically, collateral estoppel. She reasoned that Claimant was a party in the prior and current proceedings; that there was a final judgment on the merits in Claimant's prior proceedings; that the determinations in the prior proceedings were essential to those judgments; that the issue here is identical to one of the issues decided in the prior cases, that issue being whether Claimant is entitled to reinstatement of total disability benefits for aggravation of his preexisting arthritis; and that Claimant had a full and fair opportunity to litigate that issue in the prior proceedings. Moreover, in a footnote, the WCJ noted that Claimant could have raised the alleged new disability in the previous proceedings, reasoning that the decision was circulated in September 2010, and Claimant alleged his condition recurred and/or worsened in March 2010. As such, Claimant could have requested an opportunity to present additional evidence during the July 2010 remand hearing before the WCJ.

The WCJ also found that even if Claimant's reinstatement petition was not barred by res judicata, he did not establish a change in physical condition that would entitle him to a reinstatement of benefits. She found Claimant's testimony that his right knee started to flare back up in March 2010 to be incredible

10

as it was inconsistent with his testimony that his knee never improved and had been hurting and swelling since the time of the injury. She also credited Dr. Freedman's testimony regarding diagnosis and causation over the contrary testimony of Dr. Stempler. She found Dr. Freedman's opinion that Claimant's symptoms were due solely to his pre-existing arthritis to be credible as it was supported by the 2011 MRI study, showing no meniscal pathology, with which Dr. Stempler agreed. The WCJ concluded that the "totality of both Claimant's and Dr. Stempler's testimony is not that there was a change in physical condition in March 2010, but that Claimant's knee was never better and that he continued to have symptoms of pain and swelling[,]" thereby finding that Claimant did not meet his burden of proving entitlement to reinstatement. (*Id.* at 132a.)

Claimant appealed to the Board, arguing that the WCJ mischaracterized the testimony. He argued that his credibility is irrelevant as the proceeding relates to a medical issue. He also alleged that the issue was improperly framed and that the doctrines of res judicata and collateral estoppel do not apply. Finally, Claimant contended that both Drs. Stempler and Freedman agreed that his condition had worsened and that the work-related removal of his meniscus caused a new condition that is disabling.

The Board affirmed the WCJ finding no error in her reasoning that Claimant was barred by the doctrine of collateral estoppel. The Board explained that in the prior proceeding, the WCJ found that Claimant failed to establish that the work injury aggravated any pre-existing degenerative process, the same issue Claimant sought to relitigate before the Board but which was barred by the

11

doctrine of collateral estoppel. Moreover, the Board affirmed the WCJ's finding that Claimant had not proven a change in his condition, precluding a reinstatement of benefits. This appeal by Claimant followed.

## IV.

## A.

On appeal,[9] Claimant first contends that his reinstatement petition was not barred by the doctrines of res judicata and/or collateral estoppel because he was not attempting to relitigate anything previously decided. Claimant asserts that the issue before the WCJ in the previous proceeding was not whether his injury aggravated the pre-existing degenerative process at that time and in the claim petition but, rather, whether he "sustained a *brand new recurrence* of the accepted work injury stemming from sequel of the removal of the right medial meniscus." (Claimant's Br. at 13 (emphasis added)).

The umbrella of res judicata includes technical res judicata,[10] or claim preclusion, and collateral estoppel, or issue preclusion. *Weney v. Workers'*

---

[9] Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227 (Pa. Cmwlth. 2008).

[10] In *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008), *appeal denied*, 971 A.2d 494 (Pa. 2009), we detailed the criteria necessary to establish technical res judicata:

> Under the doctrine of technical res judicata, often referred to as claim preclusion, 'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is

**(Footnote continued on next page…)**

12

*Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008), *appeal denied*, 971 A.2d 494 (Pa. 2009). In invoking collateral estoppel, the following elements must be satisfied:

> 1) the issue decided in the prior case must be identical to the issue in the present case; 2) there was a final judgment on the merits; 3) the issue must be essential to the judgment; 4) the party against whom the estoppel is asserted must have had a full and fair chance to litigate on the merits; and 5) the party against whom the estoppel is asserted must be a party or in privity with a party in the prior case.

*Department of Transportation v. Martinelli*, 563 A.2d 973, 976 (Pa. Cmwlth. 1989).

Those elements are met in this matter. First, an issue addressed and decided in the claim petition litigation and which Claimant again presented during

---

**(continued…)**

> precluded.' [*Henion v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001).] In order for technical res judicata to apply, there must be: '(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the person and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.' *Id.* at 366. Technical res judicata may be applied to bar 'claims that were actually litigated as well as those matters that *should have been* litigated.' *Id.* [ ... ] 'Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.' *Id.*

 (Emphasis in original).

the reinstatement petition litigation is whether his work injury aggravated any pre-existing osteoarthritis degeneration. Second, the WCJ in the previous proceeding issued a final determination on the merits. Third, the issue of whether Claimant's work injury aggravated his pre-existing degeneration was essential to the prior judgment because if it had been so found, it would have entitled Claimant to continued compensation benefits, rendering the present matter void. Fourth, Claimant had a full and fair chance to litigate the issue of whether his work injury aggravated his pre-existing degeneration, especially given his allegations that he experienced "flare ups" before the matter was decided. Finally, Claimant was and is a party to both actions.

Regardless, this Court held in *Weney* that res judicata not only bars claims that are identical, but also claims that *should have been* litigated. 960 A.2d at 954. Here, as pointed out by the WCJ, Claimant alleges that the recurrence of his injury arose in March 2010 which indicates that he was aware of said recurrence during the July 2010 remand hearing. However, because Claimant failed to address the alleged new recurrence of his injury during the prior litigation, despite being aware and having the opportunity to raise it at the time, his claim is barred by res judicata.

**B.**

Claimant further argues that the WCJ failed to issue a reasoned decision as mandated by Section 422(a) of the Act, 77 P.S. §834, because her decision is ambiguous and not supported by credible and substantial medical evidence. Specifically, Claimant alleges that not only did Judge Craig capriciously

14

reject Dr. Stempler's unrebutted testimony as to how the work-related surgical removal of Claimant's meniscus accelerated and substantially contributed to Claimant's degenerative arthritis, but that she also failed to provide her reasoning for the rejection.

Section 422(a) provides that parties to a workers' compensation proceeding are entitled to a reasoned decision, but it does not allow for a party to challenge or second guess the WCJ's reasons for credibility determinations. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Under Section 422(a), a WCJ is not required to discuss all of the evidence presented or give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. Cmwlth. 2003). The WCJ is required only to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Id.* A decision is reasoned "if it allows for adequate review by the appellate courts under applicable review standards." *Id.*

Upon review of Drs. Stempler's and Freedman's testimonies and all other evidence, Judge Craig credited Dr. Freedman's testimony relating to diagnosis and causation over that of Dr. Stempler. She reasoned that the two doctors generally agree, with their only disagreement being whether Claimant's current symptoms and disability are related to his work injury or to his pre-existing arthritis, and whether that pre-existing arthritis was aggravated by the work injury.

15

She went on to explain that she found Dr. Freedman's testimony to be more credible and rejected Dr. Stempler's testimony where it conflicted with Dr. Freedman's because Dr. Freedman's opinions are supported by the December 2011 MRI study.

We conclude that Judge Craig's findings are adequately supported by substantial evidence so we have no reason to disturb them on appeal. Moreover, she has allowed appropriate appellate review and has provided a reasoned decision per Section 422(a) of the Act because she has set forth the relevant findings and explained the reasons that she found the foregoing medical evidence credible. This leads to the conclusion that even if this matter were not barred by res judicata/ collateral estoppel, Claimant is not entitled to benefits because he failed to establish that his injuries were work-related.

Accordingly, the order of the Board denying Claimant's petition to reinstate compensation benefits is affirmed.

        _____
        DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph DeMarco,                              :
                    Petitioner              :
                                            :
          v.                                : No. 77 C.D. 2015
                                            :
Workers' Compensation Appeal                :
Board (Marriott Hotel Services, Inc.),      :
                    Respondent              :

# **O R D E R**

AND NOW, this 5<u>th</u> day of <u>February</u>, 2016, the order of the Workers' Compensation Appeal Board dated December 23, 2014, at No. A13-1472, is affirmed.

_____
DAN PELLEGRINI, Senior Judge