IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward J. Stanis,               :
                 Petitioner     :
                                :  No.  578 C.D. 2020
         v.                     :
                                :  Submitted:  August 27, 2021
Workers' Compensation Appeal    :
Board (Brand Energy Services, Inc.,  :
Superior Scaffold, Stone & Webster,  :
and A.T. Chadwick Services),    :
                 Respondents    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                       FILED: May 23, 2022


        Edward J. Stanis (Claimant), proceeding *pro se*, petitions for review from
the April 29, 2020 order of the Workers' Compensation Appeal Board (Board), which
affirmed a decision and order of the Workers' Compensation Judge (WCJ) denying
Claimant's claim petition filed against Brand Energy Services, Inc. (Brand Energy),
Claimant's petition for penalties under the Pennsylvania Workers' Compensation Act
(Act),[1] and various petitions for joinder filed by and amongst Superior Scaffold
(Superior), Stone & Webster (Stone), and A.T. Chadwick Services (Chadwick).  We
affirm.

**Background**

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

The relevant facts and procedural history of this case are as follows. On August 15, 2016, Claimant filed a claim petition against his purported employer, Brand Energy, alleging he sustained neck, lower back, and abdomen injuries on October 22, 2015, during the course and scope of employment as a union carpenter. Claimant sought total temporary disability benefits from August 8, 2016, and ongoing, reimbursement for medical expenses, litigation costs, and unreasonable contest attorney's fees. (WCJ's Findings of Fact (F.F.) at No. 1.)

On August 16, 2016, Claimant filed a penalty petition, averring that Brand Energy violated the Act, its rules, and/or regulations by failing to issue the proper Bureau of Workers' Compensation notice either accepting or denying liability for the alleged work injury. Brand Energy denied the material allegations in both Claimant's claim and penalty petitions. *Id.* at No. 2.

On November 22, 2016, and January 30, 2017, Brand Energy filed joinder petitions, joining Chadwick and its insurer, Superior and its insurer, and Stone and its insurer. Throughout February and March 2016, Superior filed joinder petitions against Chadwick and an alleged affiliated business entity, and Chadwick filed a joinder petition against same, alleged affiliated business entity. *Id.* at No. 3.

The petitions were assigned to a WCJ. By interlocutory orders dated March 1 and April 27, 2017, the WCJ dismissed Chadwick and two insurance companies from the case. (Certified Record (C.R.) at Nos. 21, 31.)

In support of his claim and penalty petitions, Claimant testified before the WCJ.[2] Claimant stated he worked as a journeyman, carpenter, and signatory for a union since July 1, 1989, and began working for Brand Energy in May 2015 at a job site at a refinery. Claimant explained that as part of his job duties, he erected, modified,

---

[2] While Claimant proceeded *pro se* before the Board and in his petition for review in this Court, Claimant was represented by counsel during the course of the proceedings before the WCJ.

and dismantled structural steel scaffolding. Claimant stated that this would often require him to lift upright members of scaffolding that could weigh as much as 50 pounds over his head. F.F. at No. 4a.

According to Claimant,

> b. On October 22, 2015, [he] was signing out from the day's work when he was attacked from behind. He was thrown upwards and backwards off his feet as he was signing out. [Claimant] was whipped around. This took place in a large tent where all of the trades gathered for break, safety meetings, or sign out from the day's work. Claimant was assaulted by Richard Lewandowski. [] Lewandowski caught Claimant by surprise, and Claimant has no personal animosity with [] Lewandowski. Claimant described that he was violently whipped off of his feet off the ground, perhaps a foot and a half high. He was whipped backwards, and his arms were trapped to his side. [] Lewandowski's fists dug in under his ribcage to his diaphragm and his was violently whipped to and fro, side to side and backwards in an arc like motion a mile a minute. [Claimant's] head was whipping back and forth as was his torso. His legs were whipping back and forth like a pendulum. This went on for an extended period at least 20 seconds or more. Claimant understands [] Lewandowski to be a journey carpenter and a supervisor for Brand Energy []. There were several people around. [] Lewandowski eventually dropped Claimant and he stumbled trying to catch his breath. When he got up, [] Lewandowski was grinning and laughing. Claimant signed out for the day and worked the next day. The next morning the pain was settling in his neck and in the center of his back, and lower lumbar back. He was having pain, burning and aching under his ribcage or diaphragm. Claimant continued to work and continued to have pain. Claimant told some of his co-workers about his pain.

*Id.* at No. 4b.

Claimant testified that months later, on December 29, 2015, he talked to an employee of Brand Energy and obtained paperwork for a workers' compensation

3

claim and completed it the next day. Claimant said that, thereafter, he worked in modified capacity from December 30, 2015, to January 8, 2016, at which point Brand Energy laid him off. After collecting unemployment compensation (UC) benefits for two weeks, Claimant worked for another contractor, Stone, for two weeks, and then received UC benefits for two and a half months. Claimant also worked intermittently with Superior as it was common for him to work short jobs. In April 2016, Claimant resumed working for Stone for a few weeks and then worked for Chadwick from May 10, 2016, to August 6, 2016. Claimant testified that he was unable to work as of August 6, 2016, because he felt dizzy and experienced pressure in his neck, spine, upper and lower back, and tailbone area. *Id.* at No. 4c-d.

Claimant stated that he first went to a doctor on December 5, 2015, and was treated by his primary care physician, Joseph Norris, M.D. At the advice of his attorney, Claimant was also seen by William Ingram, M.D., and began receiving physical therapy to his neck and low back three times per week. Claimant added that, during this time, he underwent diagnostic procedures and later was seen by Andrew Freese, M.D. *Id.* at No. 4e.

On cross-examination by counsel for Brand Energy, Claimant admitted that when he started working for Brand Energy, he received a Handbook and a Code of Conduct, which, among other things, prohibited horseplay at the jobsite. Upon further questioning with respect to the encounter with Lewandowski, Claimant stated that he

> i.    . . . did not notify the local police about the incident. He had worked with [] Lewandowski prior to Brand Energy and believed them to have a friendly relationship. He had discussed having grandparents in Poland and his Polish heritage with [Mr.] Lewandowski.

4

j. Prior to the incident and perhaps the day before the incident, Claimant gave [] Lewandowski a tee shirt Claimant had gotten for [] Lewandowski at a Polish festival just as a friendly gesture. It was an act of goodness and kindness. He also gave one to his son Andrew. [] Lewandowski thanked Claimant for the tee shirt. Claimant did not agree that [] Lewandowski was hugging him from behind to thank him for the tee shirt. Claimant was in the middle of signing out when the incident occurred, and he completed signing out when he was put back down on the ground. Claimant did not make a report that day that he had suffered an injury because of an assault or an attack by [] Lewandowski. He continued to work up through January 8, 2016.

k. On October 23, 2015, the day after the incident, Claimant asked [] Lewandowski why he did that, and his response was to laugh and said he did it. Claimant did not report the incident to his foreman. He did not report it to anybody in a supervisory capacity.

*Id.* at No. 4i-k.

In addition, Claimant testified on cross-examination that he worked his regular job duties and full-time hours at his next job for Superior, and he performed concrete work with Chadwick, which required, among other things, that he move and lift blocks weighing between 35 to 40 pounds. Claimant conceded that during the timeframe in which he worked following the date of the alleged incident, he worked 40 hours a week and overtime when asked until August 6, 2016, at which point he felt he could not continue working. In a subsequent deposition, Superior, Stone, and Chadwick had an opportunity to cross-examine Claimant. In this deposition, Claimant testified with regard to the specific job duties he had with each purported employer, following his employment with Brand Energy, and the pain he experienced throughout that timeframe. *Id.* at Nos. 4m-5.

In further support of his petitions, Claimant presented the deposition of Dr. Freese, a board-certified neurosurgeon, who began seeing Claimant on October 12,

5

2016. As relayed by Claimant, Dr. Freese stated that when Claimant went to Dr. Norris for the first time in December 2015, he did not give Dr. Norris a history of having had a work incident at Brand Energy and failed to inform Dr. Norris that he had prior injuries to his neck and back. Ultimately, Dr. Freese opined that Claimant was unable to work, and he diagnosed Claimant as having disc herniations at C5-6 and C6-7 levels, with radiculopathy and myelopathy, and lower back disc herniations with spondylitic abnormalities or degenerations at the L4-5 and L5-S1 levels, with discogenic pain and radiculopathy. In the view of Dr. Freese, these injures were all caused by the assault on October 22, 2015, by Lewandowski. *Id.* at Nos. 5d, 6a, d-f.

In rebuttal, Superior offered the deposition testimony of Guy Bianchini, who stated, in relevant part, that in the four days Claimant had worked for Superior, January 21, 22, 25, and 26, 2016, he worked full duty as a scaffold builder and never reported that he had any problems performing his job duties and did not work with any restrictions or limitations. *Id.* at No. 7a.

Brand Energy submitted the deposition testimony of Lewandowski, who stated, in pertinent part, as follows:

> a. He has been employed as a carpenter with Brand Energy for twelve years. His duties included erecting, modifying, [and] dismantling scaffold material. . . . [] Lewandowski had known Claimant for more than five years. He never worked side by side with him on a daily routine, but he knew him through [u]nion [m]eetings, sites and talking with him.
>
> b. [] Lewandowski has a Polish background as does Claimant. He and Claimant discussed their Polish heritage and background. [] Lewandowski testified that he never attacked Claimant, but he came up to Claimant to thank him for a shirt Claimant had gotten [] Lewandowski at a Polish festival a couple of days earlier. "I came from behind him and gave him a hug for maybe two seconds at the most and

6

thanked him for the shirt." A picture of the shirt with the phrasing Polish Power was attached to the deposition as [] Lewandowski brought it to the deposition.

c.      [] Lewandowski testified that he did not lift Claimant off of his feet or snap him back to the ground. He also did not whip him from side to side. He did not lift him up and swing his lower extremities from side to side either. He did not wrap him in a bear hug so that Claimant was unable to move his arms. He did not whip Claimant's body side to side or drop him to the ground. [] Lewandowski may have been smiling when he walked away from Claimant because he was happy because Claimant had given him the shirt. He was thanking him for it. He did not assault Claimant and there was no malice towards Claimant. He never had a subsequent conversation with Claimant about the incident.

d.      After [Lewandowski] thanked Claimant, he saw Claimant performing his work as well as extra work. Claimant was carrying three [10]-foot trees at the time and normally a worker only carries one. A tree is a [10]-foot steel scaffold. It is the heaviest part of the scaffolding system and each tree weighs about 40-pounds apiece. Claimant carried them on his shoulder, lifted them, and put them down with no problem.

e.      On cross examination, [] Lewandowski testified that he put his arms around Claimant's torso to give him a hug as thanks for the shirt. He did not lift him up and Claimant stayed on the ground. About two weeks after the incident, a partner of [] Lewandowski told him that Claimant was mad at him. [] Lewandowski went up to Claimant, but he was very quiet and did not want to talk to him. When Claimant was carrying the three trees, [] Lewandowski asked him if [he was] hurt, why [was he] carrying so many things and Claimant said that's just how [he does] things. This was after the incident. He did not believe Claimant was injured because he was saying one thing, but his actions showed another.

*Id.* at No. 8.

Brand Energy also presented the deposition testimony of Martin Frey, Joseph Drum, and John Kuzmick.

Frey stated that in October 2015, he worked on the same team as Claimant. Frey testified that he observed the alleged incident between Claimant and Lewandowski. According to Frey, he saw "[Lewandowski] hug Claimant from behind and thought no more about it. It was a three[-]second hug." *Id.* at No. 9b. Frey further testified that Claimant spoke to him the next day and asked if he saw what had happened; in response, Frey said that if Claimant had "an issue with it, [he] . . . must report it to [the] supervisor." *Id.* Frey added that, during their discussion, "Claimant never said that he had suffered an injury to his body as a result of the incident." *Id.* Frey stated that Claimant was "upset" about the incident, and he felt that Claimant's pride was injured in some way. *Id.*

Drum testified that he did not witness the alleged incident between Claimant and Lewandowski. Drum stated that, shortly after the incident, Claimant worked for him on the "reserve gang," which consists of "guys from other jobs" who "unload skip pans and scaffold material." *Id.* at No. 10d. Drum testified that "Claimant helped lift six cup trees, which are about [10] feet long and weigh about [30] pounds," and that "Claimant never had any problem doing his job or asked for accommodations." *Id.* at No. 10d.

During his testimony, Kuzmick, who oversees all the scaffold work for Brand Energy, "reviewed the Code of Safe Conduct in the employee handbook, specifically citing to the requirement that all injuries, no matter how minor, were to be reported to the supervisor immediately. The handbook also prohibits horseplay, fighting or other actions which could jeopardize safety." *Id.* at No. 11a. Kuzmick stated that "he learned of an incident involving [Claimant] on December 30, 2015," at

which point Claimant "told [Kuzmick] that on October 22, 2015, at the end of the workday in the break tent, [] Lewandowski grabbed him from behind, picked him up and bear hugged him." *Id.* at No. 11b. Kuzmick further testified that he "completed a Supervisor's Investigative Report" and "had Claimant complete a witness statement." *Id.* Kuzmick said that this "was the first notice [that Brand Energy had] of the alleged incident," and that "Claimant did not give him any restrictions from a physician." *Id.* at No. 11b-c.

Brand Energy also presented the deposition testimony of F. Todd Wetzel, M.D., who is board certified in orthopedic surgery. In the course of his testimony, Dr. Wetzel explained that he first examined Claimant on October 14, 2016, and was unable to correlate Claimant's subjective complaints with objective medical findings or the results of radiological studies, "which revealed diffuse degenerative changes consistent with his age." *Id.* at No. 12b. Ultimately, Dr. Wetzel opined that "Claimant sustained a lumbar and cervical sprain and strain as a result of the October 22, 2015 incident and [had] fully recovered by the time of [Dr. Wetzel's] examination." *Id.*

In rendering her credibility determinations, the WCJ declined to credit the testimony of Claimant. Specifically, the WCJ offered the following reasons for doing so:

> 13. This [WCJ] has very carefully reviewed Claimant's testimony and compared it with the testimony of the various fact witnesses. This [WCJ] finds Claimant not credible or persuasive that he was assaulted on October 22, 2015. Claimant's credibility is not supported by this [WCJ's] observation of Claimant during his live testimony. Admittedly, [] Lewandowski came up from behind Claimant and hugged him on October 22, 2015, to thank Claimant for a tee shirt Claimant gave [] Lewandowski from a Polish Festival. However, the hug did not rise to the level of an assault as claimed by Claimant. Claimant's description of the incident as an assault[,] where he was whipped around in

9

his [claim] [p]etition, his testimony and the statement he gave to Mr. Kuzmick[,] was not witnessed by anyone else in the tent. Claimant is very specific in saying that he was lifted off the ground and violently tossed back and forth, side to side, to and fro, a mile a minute for at least twenty seconds or more. However, the witness that Claimant agrees saw the incident describes it as a three[-]second hug. That witness, [] Frey, also suggests that the incident involved injuring Claimant's pride in some way. [Frey] counseled Claimant almost immediately after the incident to report the incident if he had a problem with it. Claimant did not report the incident even though he alleges it was a violent assault and he sustained injuries because of the violent assault. Claimant is a seasoned union employee who understands the necessity of report a workplace injury or assault when it occurs. He did not do so. This [WCJ] finds that the testimony of [] Frey totally erodes Claimant's allegations that he was assaulted. There was no assault on October 22, 2015, and Claimant did not sustain any injuries as a result of the three[-]second hug given to him by [] Lewandowski. Also significant is the fact that Claimant continued to work at his job which is very physically demanding for two months after this violent, alleged assault for Brand Energy and then through the following year for subsequent companies. This erodes Claimant's testimony that he suffered a work injury on October 22, 2015.

*Id.* at No. 13.

The WCJ also declined to credit the testimony of Claimant's medical expert, Dr. Freese, setting forth the following reasons for making this determination:

18.    This [WCJ] has carefully reviewed the testimony of Dr. Freese and finds that it is not credible or persuasive. It is rejected in its entirely. Significant in this determination is the fact that Dr. Freese did not see Claimant until almost one year after his alleged violent assault/work injury and he relies on Claimant's statements to him of what transpired at work to form his opinions. As Claimant's testimony has been rejected, this renders the opinions of Dr. Freese incredible as they are not based on a competent factual foundation. Dr. Freese ignores the fact that Claimant's initial treatment

10

records do not recount a violent assault or work injury. The history given in the records of the treatment Claimant sought closest to the time of the alleged injury erodes Claimant's testimony and the opinions of Dr. Freese as they are not consistent and do not corroborate Claimant's version of events.

*Id.* at No. 18.

On the other hand, the WCJ accepted as credible and persuasive the testimony of Bianchini, Lewandowski, Drum, and Kuzmick. The WCJ also accepted as credible and persuasive the testimony of Dr. Wetzel, but determined that it was not relevant to the matter, because the WCJ found that Claimant's testimony was not credible, and Claimant failed to prove that he was assaulted or sustained a work-related injury. *Id.* at Nos. 14-17, 19.

Based on these credibility determinations, by decision and order dated February 20, 2019, the WCJ denied and dismissed Claimant's claim and penalty petitions and the joinder petitions. In so doing, the WCJ determined that Claimant's alleged work incident did not occur and, therefore, he did not sustain any work-related injuries. The WCJ also determined that Claimant failed to establish that Brand Energy violated the Act. (WCJ's Conclusions of Law at Nos. 1-4.)

Thereafter, Claimant, *pro se*, appealed to the Board, arguing that the WCJ's findings of fact were not supported by substantial evidence, the WCJ's credibility determinations were in error, and the WCJ failed to issue a reasoned decision pursuant to section 422(a) of the Act, 77 P.S. §834. Finding no merit in these contentions, the Board affirmed the WCJ, and Claimant then filed a petition for review in this Court.[3]

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes* **(Footnote continued on next page…)**

## Discussion

Before this Court, Claimant argues that he credibly testified that Lewandowski assaulted him on October 22, 2015, and satisfied his burden of proving that he sustained a work-related injury. Claimant also contends that the testimony of his medical expert, Dr. Freese, established that he sustained severe and disabling discogenic injuries to his cervical and lumbar spine as a result of the assault. Finally, by way of implication, Claimant suggests that the WCJ failed to issue a reasoned decision as to why she denied the claim and penalty petitions.

Initially, we observe that it is the claimant who bears the burden of proving all elements necessary to support an award of workers' compensation benefits, namely that the claimant sustained an injury in the course of employment and the injury is causally related thereto. *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 861 (Pa. Cmwlth. 2011). Where the causal relationship between the work incident and the injury is not obvious, unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 145 (Pa. Cmwlth. 2015).

Moreover, it is a fundamental tenet of workers' compensation law that the WCJ, as factfinder, has complete authority over questions of witness credibility and evidentiary weight and is empowered to resolve conflicts in the evidence. *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. *Id.* at 144. As the ultimate factfinder, the WCJ is free to accept or reject the testimony of any

*Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

12

witness, including a medical witness, in whole or in part. *Id.* at 143. A court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

> Section 422(a) of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. §834.

To comply with section 422(a) of the Act, a WCJ's decision must permit adequate appellate review; the purpose of the reasoned decision requirement "is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-96 (Pa. Cmwlth. 2006). Under section 422(a), a WCJ must adequately explain the reasons for rejecting or discrediting competent evidence when conflicting evidence is presented. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003). For witnesses testifying before the WCJ, it is appropriate for the WCJ to base his or her determination solely upon the demeanor of the witnesses, and a mere conclusion as to which witnesses were credible is sufficient for a reasoned decision. *Id.* at 1052-53; *PPL v. Workers' Compensation Appeal Board (Rebo)*, 5 A.3d 839, 845 (Pa. Cmwlth. 2010). However, when witnesses testify only by deposition, the WCJ must articulate an actual objective basis for the credibility determination. *Daniels*, 828 A.2d at 1053.

Here, the WCJ found that Claimant's testimony was not credible. The WCJ made this determination, in part, based upon her assessment of Claimant's demeanor while testifying. The WCJ also discredited Claimant's testimony and description of the incident because she credited the conflicting testimony of other fact witnesses, specifically Lewandowski and Frey, and also because Claimant continued to work in a moderate to heavy-duty capacity for a lengthy period of time following the alleged incident, did not report the incident until approximately two months later, and did not see a doctor until a year after the incident. Having found Claimant's testimony to be not credible, the WCJ naturally found the testimony of Dr. Freese not to be credible, due to the fact that his medical opinion was based on an underlying, erroneous factual foundation.

Upon review, we conclude the above articulations by the WCJ satisfied the reasoned decision requirement and adequately explained the bases for the WCJ's credibility determinations. We further conclude that there is nothing to indicate that the WCJ's credibility determinations were made arbitrarily or capriciously. As the factfinder, the WCJ was free to accept the testimony of Lewandowski and Frey over the testimony of Claimant. In turn, the testimony of Lewandowski and Frey, as well as that of other witnesses, constituted substantial evidence to support the WCJ's finding and determination that Claimant did not sustain a work-related injury. Because Claimant failed to adduce credible evidence to establish his entitlement to workers' compensation benefits, we conclude that the WCJ did not err in denying and dismissing Claimant's claim and penalty petitions and the petitions for joinder. *See Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 81-82 (Pa. Cmwlth. 2012) (concluding that the WCJ did not err in denying the claimant's claim petition where "the WCJ issued factual findings supported by substantial evidence,"

14

"based those findings upon credibility determinations supported by objective reasons," and "[t]hose findings, in turn, support[ed] the WCJ's conclusion that [the claimant] failed to satisfy his burden of proof").

Accordingly, we affirm the order of the Board affirming the decision and order of the WCJ.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward J. Stanis,                 :
             Petitioner          :
                               :    No. 578 C.D. 2020
     v.                      :
                               :
Workers' Compensation Appeal    :
Board (Brand Energy Services, Inc.,  :
Superior Scaffold, Stone & Webster,  :
and A.T. Chadwick Services),     :
             Respondents     :

## ***ORDER***

AND NOW, this 23rd day of May, 2022, the April 29, 2020 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge