IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Guille,                               :
                    Petitioner             :
            v.                             :        No. 1197 C.D. 2022
                                           :        Submitted: May 26, 2023
Upper Darby Township (Workers'             :
Compensation Appeal Board),                :
                    Respondent             :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                          FILED: August 15, 2023


        Frank Guille (Claimant) petitions for review of an adjudication of the
Workers' Compensation Appeal Board (Board) that granted Upper Darby
Township's (Employer) termination petition and denied Claimant's petition to
review compensation benefits. In doing so, the Board affirmed the decision of the
Workers' Compensation Judge (WCJ) that Claimant was fully recovered from his
work injuries. Upon review, we affirm.

## Background

        Claimant was employed as an acting patrol supervisor. On January 24,
2021, while Claimant was investigating a car without a license plate, the suspect put
the car in reverse and accelerated backwards downhill into Claimant's patrol vehicle.
Employer issued a medical-only Notice of Temporary Compensation Payable
(NTCP) describing the injury as a "strain or tear" to Claimant's "low back and neck."
Certified Record (C.R.), Item 24, at 1. Employer then issued an amended NTCP
providing for indemnity benefits.

On July 16, 2021, Employer filed a termination petition alleging full recovery as of July 7, 2021. In response, Claimant filed a review petition to add cervical herniations with radiculopathy, lumbar herniations with radiculopathy, post-concussion syndrome, vestibulopathy, vertigo, dizziness, headaches, and impaired speech and memory to the description of injury.[1] Both petitions were heard by a WCJ.

In support of its termination petition, Employer presented the deposition testimony of Stephen Fedder, M.D., who is board certified in neurology. On July 7, 2021, Dr. Fedder conducted an independent medical examination (IME) of Claimant, obtained a history of the work injury, and reviewed Claimant's medical records, which included a report of Dr. Brian Rebisz, a chiropractor, dated January 25, 2021. Dr. Rebisz's report described that on January 24, 2021, Claimant's patrol vehicle was traveling at "a low rate of speed" that "came to a complete stop" before being struck in the front end by the suspect's car, which was traveling at about 30 miles per hour. Notes of Testimony (N.T.), 10/14/2021, at 18; Reproduced Record at 112a (R.R.___). The air bags in Claimant's vehicle did not deploy. Claimant whipped forward and backward, struck the headrest, and felt dazed. Claimant exited the vehicle, apprehended the suspect, put him in handcuffs, drove back to the police station, and drove home.

Dr. Fedder also reviewed an immediate post-concussion assessment and cognitive testing (ImPACT) by Bruce Grossinger, D.O. Dr. Fedder opined that the ImPACT test, which evaluates sport injuries, was invalid because it was only a "one-point evaluation." N.T., 10/14/2021, at 22-23; R.R. 116a-17a. Dr. Fedder

---

[1] Employer also requested utilization review of certain medical treatments Claimant received since October 19, 2021. The WCJ granted Employer's petition. Claimant did not appeal the WCJ's decision.

2

testified that generally, the ImPACT test should include a baseline test with a second test administered after a traumatic event.

In addition, Dr. Fedder reviewed records from Dr. Grossinger dated November 16, 2018, and an Employer's report dated January 24, 2021; both indicated prior injuries in Claimant's neck, low back, and hip. Claimant had been treating with Dr. Rebisz for low back pain once or twice a week before the January 24, 2021, work incident. Dr. Fedder also reviewed an electromyography scan (EMG) and a magnetic resonance imaging scan (MRI) of Claimant's cervical spine performed in April of 2021, which reported a radiculopathy at C7 and foraminal stenosis at C6-7. Dr. Fedder testified that these studies had no "clinical relevance" or correlation to physical findings because Claimant did not describe a radicular pattern of his upper extremities. N.T., 10/14/2021, at 25-26; R.R. 119a-20a. Claimant's complaint of radiating pain from his right arm to the right elbow is not a C7 dermatome pattern. Claimant negated tingling in his right forearm and hand, which also eliminated a finding of C7 radiculopathy. *Id*. at 40; R.R. 134a. Dr. Fedder opined that the cervical spine MRI on April 23, 2021, showed degenerative disease, which was unrelated to the work injury.

Dr. Fedder further reviewed Claimant's lumbar spine MRI dated April 16, 2021, which showed dehydration at the levels from L3 to L5-S1, minor disc abnormalities, and annular tears at the levels of L3-4 and L5-S1. Dr. Fedder testified that these findings were consistent with long-standing degenerative disease and unrelated to the work injury. N.T., 10/14/2021, at 53; R.R. 147a. In addition, the lumbar spine MRI did not show a neuro-element compression or nerve stress signs. Claimant did not describe a radicular pattern of his lower extremities. Further, Dr. Fedder opined, the EMG of the lower extremities on February 27, 2021, was done

3

too soon to be valid because it takes at least six weeks for a radiculopathy to manifest on an electrical study. *Id*. at 26-27, 41; R.R. 120a-21a, 135a.

Dr. Fedder opined that, based upon the incident history, the medical records, and the physical examination, Claimant sustained a minor sprain of the cervical and lumbar spine from the January 24, 2021, work incident. That Claimant was able to exit the vehicle, apprehend a suspect, put him in handcuffs, and drive back to the police station and home indicated continuously intact information processing and executive cognitive function as well as an architecturally stable spine. N.T., 10/14/2021, at 38; R.R. 132a. At the time Claimant arrived at home, there was no evidence of traumatic brain injury including concussion. Dr. Fedder opined that the cognitive complaints by Claimant were unrelated to the January 24, 2021, incident. Claimant's complaints of dizziness were inconsistent with his ability to transition from sitting to standing, to bend and to put on his shoes. Because Claimant had not been diagnosed with a concussion, his dizziness or vertigo could not be attributed to a post-concussive syndrome. Claimant's description of restricted neck and lumbar motion was incompatible with Dr. Fedder's clinical findings at his physical examination of Claimant.

Dr. Fedder opined that Claimant did not sustain the injuries he claimed in the review petition as a result of the work incident. Claimant had a normal neurological assessment; had fully recovered from a cervical and lumbar spine sprain; and could return to his job without restriction.

On cross-examination, Dr. Fedder acknowledged that he did not review the records of Claimant's treating doctor, Dr. William Murphy, or the records of Claimant's physical therapy providers. Dr. Fedder agreed that Dr. Rebisz's evaluation report on the day after the accident indicated Claimant complained of

4

"constant sharp headaches and temporary memory loss." N.T., 10/14/2021, at 85; R.R. 179a. Dr. Fedder opined, however, that these complaints were inconsistent with the description of the work incident. On redirect examination, Dr. Fedder testified that 35% of the general population would have MRI findings such as Claimant's, and, as such, it is important to "correlate the imaging with the person." *Id*. at 106; R.R. 200a.

In opposition to the termination petition and in support of his review petition, Claimant testified before the WCJ on August 4, 2021. As an acting patrol supervisor, Claimant primarily performed paperwork, but he was also required to patrol and answer calls for service. Claimant testified that the January 24, 2021, incident caused neck and back pain as well as a headache, and that he developed more injuries later as a result of the incident, which included a head injury; neck pain; radiating pain from his neck down his right arm; low back pain radiating to the back of his hamstrings; a concussion; dizziness; and balance, migraine, and headache issues. He also tended to stutter and became forgetful. N.T., 8/4/2021, at 19-20; R.R. 36a-37a. Claimant testified that he had sustained a low-back strain and sprain in 2018 as a result of another work-related incident and received chiropractic treatment. *Id*. at 22; R.R. 39a. Claimant testified that all of his pain and symptoms have increased since the 2021 incident, except for the vertigo. He had constant headaches; the pain from migraines was extreme. Claimant was receiving Heart and Lung Act[2] benefits.

On cross-examination, Claimant testified that he was belted at the time of the incident; his body struck the headrest but not the vehicle structure. Claimant

---

[2] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637–638.

did not lose consciousness. Neither the patrol car nor the suspect's vehicle was damaged.

Claimant testified again before the WCJ on February 2, 2022. He described his pain in his low back, neck, and right lower leg as well as headaches that resulted from his 2018 work accident. He acknowledged that he experienced cervical and lumbar radiculopathy prior to the 2021 work incident. Concerning his 2021 injuries, Claimant testified that the pain in each body part had increased since he testified in August 2021, except for the vertigo. The migraines now lasted for multiple days up to a week. Claimant did not believe he could do his regular job or light duty.

Claimant presented the deposition testimony of William Murphy, D.O, who is board certified in physical medicine and rehabilitation. Dr. Murphy has treated Claimant since August 18, 2021, at which time he obtained a history of the work incident. Claimant complained of headaches, lightheadedness, dizziness, and problems with balance; intermittent nausea and occasional vomiting; occasional problems with short-term memory, concentration, and word recall; neck pain with radiating pain, numbness and tingling in his right arm; and low back pain with radiating pain, numbness and tingling into his legs. Dr. Murphy also reviewed Claimant's medical history, which included a lumbar injury from a 2018 motor vehicle accident. Claimant had recovered from the 2018 injury "without any residual problems." N.T., 11/17/2021, at 22; R.R. 261a. Claimant's medical records did not indicate disc herniations or radiculopathy prior to the 2021 work injury. *Id.* at 23; R.R. 262a.

Dr. Murphy opined that a lumbar MRI performed on April 16, 2021, identified disc herniations at L3-4 and L5-S1. An EMG dated February 27, 2021,

6

identified a left L4-5 and a right S1 radiculopathy. A cervical MRI dated April 23, 2021, identified disc herniations at C3-4, C4-5 and C6-7 with stenosis.

Dr. Murphy opined that based upon his review of the medical record and physical examinations, Claimant sustained a cervical strain and sprain; cervical disc herniations at C3-4, C4-5 and C6-7; a right C7 radiculopathy; a lumbosacral sprain and strain; disc herniations at L5-S1 and L3-4; left L4-5 and right S1 radiculopathies; concussion with post-concussive symptoms including vertigo, dizziness, headaches, impaired speech and memory; and post-traumatic vestibulopathy, all of which were related to Claimant's January 24, 2021, work incident. Dr. Murphy opined that Claimant was totally disabled from his work.

On cross-examination, Dr. Murphy stated that "[t]here are some preexisting findings" on the lumbar MRI; however, there were disruptions of the disc consistent with trauma to the spine in a motor vehicle accident. N.T., 11/17/2021, at 61; R.R. 300a.

**WCJ Decision**

The WCJ granted Employer's termination petition and denied Claimant's review petition. In so doing, the WCJ credited Dr. Fedder's testimony over Dr. Murphy's as consistent with Claimant's medical records and his conduct at the time of the injury. That Claimant was able to exit from and enter into his vehicle, apprehend the suspect and drive back to the police station negated any work-related neurological injury. WCJ Decision at 11; Finding of Fact No.12. Dr. Murphy did not refute Dr. Fedder's testimony that Claimant's cognitive complaints did not occur from trauma or that a diagnosis of a concussion was required before post-concussion syndrome can be diagnosed. *Id*. at 12; Finding of Fact No.12. In any case, there was no medical support for the diagnoses of post-concussion syndrome,

7

vestibulopathy, vertigo, dizziness, headaches, balance issues, and impaired speech and memory. The WCJ credited Dr. Fedder's testimony that Claimant did not sustain a cervical or lumbar radiculopathy because Claimant's complaints to Dr. Fedder were inconsistent with radiculopathy.

In contrast, Dr. Murphy did not cite clinical findings for his diagnoses of cervical or lumbar herniations with radiculopathy. Dr. Murphy did not refute Dr. Fedder's conclusion that the MRI findings did not relate to the work injury. WCJ Decision at 12; Finding of Fact No.12.

Finally, the WCJ found Dr. Fedder more credible because his physical examination was more comprehensive than Dr. Murphy's. Dr. Fedder gave a thorough explanation of his opinions, and Dr. Murphy did not. *Id.* at 13; Finding of Fact No.12.

The WCJ found Claimant credible with respect to the occurrence of the work injury. The WCJ found Claimant not credible with respect to his symptoms from the work injury or his inability to work, which Dr. Fedder credibly refuted.

Claimant appealed, and the Board affirmed the WCJ's decision.

## Appeal

Claimant petitions for this Court's review and raises one issue for our consideration.[3] He argues that the Board erred in affirming the WCJ's decision because the WCJ's credibility determinations were insufficient, which rendered his findings of fact not supported by substantial evidence. Claimant contends that Dr. Fedder's opinions were equivocal inasmuch as he was uncertain about the extent of

---

[3] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

8

the injuries Claimant had sustained. Further, the WCJ did not adequately explain his decision to reject Dr. Murphy's opinions. As such, Claimant argues, the WCJ did not issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act).[4] Moreover, Claimant contends, the WCJ erred in granting the termination petition because Employer continued to pay Heart and Lung Act benefits.

The WCJ, as fact finder, "has exclusive province over questions of credibility and evidentiary weight, and the [WCJ]'s findings will not be disturbed when they are supported by substantial, competent evidence." *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). The WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710. Section 422(a) of the Act states:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. *All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834 (emphasis added).

9

exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

The WCJ's exercise of discretion, however, is not without limitation. Section 422(a) of the Act requires the WCJ to issue a "reasoned decision" that "adequately explain[s]" a credibility determination. 77 P.S. §834. Our Supreme Court has held that a decision is "reasoned" for purposes of Section 422(a) of the Act "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). Regarding live testimony presented at a hearing, a WCJ's decision need not "explain inherently subjective credibility decisions according to some formulaic rubric or [be] detailed to the 'nth degree.'" *Id*. at 1053. However, the rule is different for the deposition testimony of medical experts, where a credibility determination cannot be based on personal observations. In that case, the WCJ's "resolution of the conflicting evidence cannot be supported by a mere announcement that [the WCJ] deemed one expert more 'credible and persuasive' than another." *Id*. Rather, a WCJ must articulate an objective basis for the credibility determination by identifying and evaluating the factors relevant to credibility. *Id*.

Here, the medical experts of both parties testified by deposition. The WCJ credited Dr. Fedder's testimony over Dr. Murphy's for the stated reason that Dr. Fedder's examination was more comprehensive and his explanations of his medical opinions were more thorough. WCJ Decision at 13, Finding of Fact No.12. Dr. Fedder's examination revealed no neurologic deficit or cognitive conditions as Claimant described. Specifically, Claimant did not describe a radicular pattern of

pain in his arms and legs that could be correlated to the EMGs and MRIs. By contrast, Dr. Murphy cited no clinical findings for the diagnoses of cervical or lumbar herniations with radiculopathy, with the exception of certain maneuvers he observed during Claimant's physical examination, and he did not rebut Dr. Fedder's testimony that there was no relation between the MRI findings and Claimant's work injury. *Id*. at 12; Finding of Fact No.12. The WCJ further found that Dr. Fedder's opinion on the nature of Claimant's work injuries was consistent with the report of the work incident by Dr. Rebisz on January 25, 2021, which showed Claimant's intact information processing and executive cognitive function, which refuted a concussion diagnosis. Dr. Murphy did not rebut Dr. Fedder's opinion that the cognitive symptoms described by Claimant did not result from trauma or that a diagnosis of a concussion was needed before a diagnosis of post-concussion syndrome. *Id.*

In sum, the WCJ in this case did more than announce "one expert more credible and persuasive than another." *Daniels*, 828 A.2d at 1053. Rather, the WCJ articulated an objective basis for his credibility determination by identifying and evaluating the factors relevant to credibility. *Id*.

Employer's NTCP described Claimant's work injury as a low back and neck strain, from which Employer asserted he had fully recovered as of July 7, 2021. "An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 507 (Pa. Cmwlth. 1998). On the other hand, an employee seeking to revise the description of the work injury bears the burden of establishing that his

injury was sustained during the course and scope of employment and is causally related thereto. *McCabe v. Workers' Compensation Appeal Board (Department of Revenue)*, 806 A.2d 512, 515-16 (Pa. Cmwlth. 2002). When the connection between the injury and the alleged work-related cause is not obvious, it is necessary to establish the cause by unequivocal medical evidence. *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 518 A.2d 1316, 1319 (Pa. Cmwlth. 1986).

Here, the WCJ, in a proper exercise of his discretion, credited Dr. Fedder's testimony that Claimant sustained a cervical and lumbar strain as a result of the work injury and that he observed no neurologic deficit or cognitive symptoms described by Claimant as of July 7, 2021, the date he performed the IME. The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster*, 721 A.2d at 1155. The Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. In light of the above, we conclude that there is substantial evidence to support the WCJ's finding that Claimant has fully recovered from the 2021 work injury, which included a cervical and lumbar spine sprain.

Finally, Claimant's argument that the WCJ erred in granting the termination petition because Employer continued to pay Heart and Lung Act benefits is without merit. The WCJ had no authority to adjudicate termination of Heart and Lung Act benefits. *Wisniewski v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 621 A.2d 1111, 1114-15 (Pa. Cmwlth. 1993). Whether Employer has

12

moved to terminate Claimant's Heart and Lung Act benefits has no relevance to Employer's termination petition under the Act.

## Conclusion

For these reasons, we hold that the Board did not err in affirming the WCJ's grant of Employer's termination petition and denial of Claimant's review petition. Accordingly, we affirm the Board's October 7, 2022, adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Guille,            :
           Petitioner     :
         v.           :     No. 1197 C.D. 2022
                   :
Upper Darby Township (Workers'  :
Compensation Appeal Board),    :
         Respondent

# **O R D E R**

AND NOW, this 15th day of August, 2023, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated October 7, 2022, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita